In re Thomas W. DuBOSE, Indiv. fdba Custom Wood of Toledo, Debtor.

Thomas W. DuBOSE, Indiv. fdba Custom Wood of Toledo, Plaintiff,

v.

Jerry KACZMARSKI, Defendant.

Nos. 81–0172, 80–00728.

United States Bankruptcy Court, N. D. Ohio, W. D.

Aug. 5, 1982.

James E. Moan, Sylvania, Ohio, for plaintiff.

Geoffrey A. Cottier, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court upon the Debtor's Complaint for Determination of the Dischargeability of Debt. Both parties agree and request that this Court make a decision based upon the briefs submitted. Defendant Jerry Kaczmarski contends that as a co-debtor or surety, his involuntary payment of the tax obligation of the partnership after the dissolution of the partnership should place him in the priority position of the taxing authorities pursuant to Section 509 of the Bankruptcy Code, thereby making the debt nondischargeable. The Debtor contends that the debt to Kaczmarski created by virtue of the latter's payment of the partnership tax obligation, is a dischargeable debt, and that Kaczmarski should not be allowed to stand in the priority position of the taxing authorities.

### FACTS

The Court finds the following facts:

1.) Debtor Thomas W. DuBose and Jerry Kaczmarski were partners in the partnership known as Custom Wood of Toledo.

2.) On June 1, 1977, the partners entered into a dissolution of their partnership.

3.) On June 21, 1977, the partners executed a written agreement whereby the Debtor assigned all leasehold interest in the premises at 6061 Telegraph Road to Kaczmarski, who agreed to pay the Debtor a fixed sum. It was further agreed that the Debtor would assume all debts and obligations of the partnership which were incurred prior to June 1, 1977, and Kaczmarski would assume all debts and obligations incurred after June 1, 1977. In addition, Kaczmarski would acquire the partnership premises, equipment, fixtures and supplies. Kaczmarski then reorganized the business and continued it under a new name.

4.) On December 14, 1978, Kaczmarski brought an action in the Municipal Court of Toledo, Ohio, against the Debtor for the breach of the June 21, 1977 agreement. Judgment was awarded to Kaczmarski in February of 1980.

5.) The Debtor filed his Chapter 7 Petition in Bankruptcy on May 12, 1980. Included in the Debtor's schedule of assets were the tax obligations owed to the Federal government and the money judgment owed to Kaczmarski.

6.) In August of 1980, prior to the Debtor's discharge, the Internal Revenue Service seized property owned by Kaczmarski as partial payment of the delinquent partnership taxes. Kaczmarski then paid the balance of the partnership tax debt in order to remove the existing tax liens on his property.

7.) On December 29, 1980, Kaczmarski filed an action in the Municipal Court of Toledo, Ohio, against the Debtor based upon the June 21, 1977 agreement seeking judgment in the amount of $3,743.54 which includes the amount paid by Kaczmarski for the partnership taxes and penalties assessed against the partnership, as well as an additional amount for damages covering finance charges, interest, expenses, Court costs, and attorney fees. The Municipal Court in denying Debtor's Motion to Dismiss the action, made a finding that the debt was not discharged in Bankruptcy.

8.) On March 5, 1981, the Debtor filed this Complaint in the Bankruptcy Court seeking the determination of the dischargeability of the debt.

This Memorandum Opinion will be limited to the question of whether or not Kaczmarski can be subrogated to the priority position of the taxing authorities for purposes of distribution from the estate assets or payment by the Debtor.

## LAW

■ In order to fully understand the issue and the law as it applies to the issue, a determination must be made as to the characterization of Kaczmarski. Although the Debtor and Kaczmarski had an agreement dissolving their partnership, there was no evidence presented to show that this dissolution was communicated to the Internal Revenue Service (IRS) for purposes of tax liability. It appears that the IRS had no knowledge of the June 21, 1977 agreement whereby the Debtor would assume all debts and obligations of the partnership prior to June 1, 1977, and Kaczmarski would assume those after June 1, 1977. To the IRS, Kaczmarski and the Debtor were still partners and therefore jointly and severally liable on the partnership tax obligations. After the filing of this Bankruptcy case, the IRS proceeded against the only other liable nonbankrupt party for collection of the delinquent taxes-Kaczmarski. Since both the Debtor and Kaczmarski were primarily liable on the tax obligation, they were codebtors for purposes of the Bankruptcy Code.

Section 509 of the Bankruptcy Code addresses itself to the availability of subrogation for claims of co-debtors. It states in pertinent part the following:

*Claims of codebtors (11 U.S.C. § 509)*
"(a) Except as provided in subsections (b) and (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

(1) a claim of such entity for reimbursement or contribution on account of a payment of such creditor's claim is—

(A) allowed under Section 502 of this title [11 USCS § 502];

(B) disallowed other than under Section 502(e) of this title [11 USCS § 502(e)]; or

(C) subordinated under Section 510 of this title [11 USCS § 510]; or

(2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor . . . ."

At first blush, Section 509(a) appears to allow Kaczmarski to step into the shoes of the IRS and receive a non-dischargeable priority tax claim to the extent of the amount of the payment he made. Subsection (b), however, sets forth the various exceptions to this rule.

### § 509(b)(1)(A)

The first exception, § 509(b)(1)(A) arises when the co-debtor has already been granted payment under the theory of contribution or reimbursement; for clearly, the co-debtor should only be allowed one recovery. No evidence was presented to indicate that Kaczmarski has been granted or has asked for reimbursement or contribution. Therefore, no showing has been made to indicate that this exception applies.

### § 509(b)(1)(B)

A second exception, § 509(b)(1)(B) occurs when a claim for reimbursement or contribution is disallowed other than under Section 502(e) which deals with the disallowance or contingency of the original creditor's claim. Clearly in that situation, the subrogee could not step into a position which would be better than that of the original creditor. If the original creditor's claim would have been disallowed, or was contingent as of the date of the allowance of such claim, the subrogee's claim should stand in the same stead. Furthermore, Section 502(e)(1)(C) reiterates the rule that an entity may claim contribution or reimbursement under Section 502 or subrogation under Section 509, but not both. Finally, sub-

section (e)(2) of Section 502 states that to the extent that a claim for contribution or reimbursement becomes fixed subsequent to the commencement of the case it is to be considered a pre-petition claim for purposes of allowance. No evidence was presented to indicate this exception applies to the facts of this case. There has been no proof that the claim of the IRS would have been disallowed for any reason. The claim for taxes was fixed, not contingent. It became a fixed claim of Kaczmarski at the time of payment. Even though his payment was made after the commencement of the case, Section 502(e)(2) as explained above, allows the payment to be characterized as a pre-petition claim for purposes of allowance.

## § 509(b)(1)(C)

A third exception § 509(b)(1)(C) states that claims for subrogation are subordinated to the extent that a claim of the surety or co-debtor for reimbursement or contribution is subordinate under section 510(a) or 510(b). This subsection merely states the equitable rule that the co-debtor should not be paid any part of the money he advanced until the original creditor has been completely satisfied first.

Finally, Section 509(b)(2) expresses the general rule that prevents a debtor, who is ultimately liable, from recovering from a co-debtor or surety.

No evidence has been presented to the Court that either of these two final exceptions apply to the facts of this case.

It would appear then that under Section 509, Kaczmarski would be entitled to subrogation since none of the exceptions apply. However, attention must be paid to the other relevant section of the Code essential to this discussion, Section 507(d). Section 507(d) states the following:

" . . . . (d) *An entity* that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section *is not subrogated to the right* of the holder of such claim *to*

*priority* under such subsection . . . . " (emphasis added)

Section 507(d) and its scant legislative history have been cogently discussed by both Bankruptcy Judge William Brister of Texas and the Fifth Circuit Court of Appeals in the case of *In re Missionary Baptist Foundation of America, Inc.,* 12 B.R. 570 (Bkrtcy. N.D. Tex. 1981); and appealed in 667 F.2d 1244 (5th Cir. 1982). That case in contrast to the case at bar, deals with a wage claim priority and the Courts' discussions regarding subrogation to that priority. Specifically, a supermarket which had cashed worthless payroll checks issued by the debtor-employer was entitled to be subrogated to the priority status of the employees whose checks it had cashed. In delving into the legislative history and past cases, the Courts ultimately concluded that at least in the limited situation of a subrogated wage priority, as seen in the *Missionary Baptist* case, Congress did not intend to prevent subrogation under Section 507(d). While a clear factual distinction can be made to the case before this Court, the discussions are relevant to the extent that they attempt to extricate the underlying purpose of Section 507(d) as it applies to Section 509. This Court does not believe that the conclusion reached in the *Missionary Baptist* case should be extended to the facts in the case at bar. A similar conclusion has been reached by Bankruptcy Judge James A. Pusateri in *Woerner v. Farmers Alliance Mutual Insurance Company,* 9 B.C.D. 63, 19 B.R. 708 (Bkrtcy. D. Kan. 1982). In that case, an insurance company asserted that it held a non-dischargeable priority claim since it had paid the Debtor's state tax liability pursuant to an indemnification contract. In citing § 507(d), the Court denied the affixation of priority status upon the insurance company.

The language in Section 507(d) appears on its face to be clear in its limitation. A determination must be made as to whether the tax obligations owed by the partnership and paid by Kaczmarski were those which

are covered by subsections *(a)(3)*, *(a)(4)*, *(a)(5)*, or *(a)(6)* of section 507. The text of those subsections appears as follows in pertinent part:

*"Priorities (11 U.S.C. § 507)*

(a) The following expenses and claims have priority in the following order:

... (3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance and sick leave pay ...

(4) Fourth, allowed unsecured claims for contributions to employee benefit plans ...

(5) Fifth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title [11 USCS § 523(a)(1)(B) or (a)(1)(C)], not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; ...."

The IRS supplied a letter to Kaczmarski dated August 25, 1980 indicating the amount of taxes due as of December 31, 1977 and further indicating that the taxes due were from forms 940 and 941. The taxes required under forms 940 and 941 are the following:

940—Employer's Annual Federal Unemployment Tax

941—Employer's Quarterly Federal Tax—FICA and income taxes withheld.

Those taxes required by forms 940 and 941 are covered in Section 507(a)(6)(D). As stated previously, subsection (a)(6)(D) addresses those taxes required to be collected or withheld and for which the Debtor is liable in whatever capacity. The legislative history expresses that FICA and income taxes withheld are clearly included in this subsection as well as Federal Unemployment Insurance. S. Rep. No. 95-989, U.S. Code Cong. & Admin. News 1978, p. 5787, p. 71; 9A Am. Jur. 2d § 728–732, p. 467 (1980).

Consequently, in so far as the taxes in question are covered in the exception Section 507(a)(6), as specified above in Section 507(d), there can be no priority status conferred upon Kaczmarski by virtue of the payment made by him to the IRS. It is therefore

ORDERED that priority status shall be DENIED.

In so reaching these conclusions, the Court has considered all the evidence presented whether or not referred to specifically in the Opinion above.

Although priority is disallowed under Section 507(d), no evidence was presented as to whether or not the debt owed by the Debtor to Kaczmarski is excepted from discharge pursuant to Section 523 of the Bankruptcy Code. Although the Municipal Court made a finding that the debt is nondischargeable, the issue has not adequately been addressed in this Court. It is therefore

FURTHER ORDERED that a continued Pre-Trial will be held on September 23, 1982, at 1:30 o'clock P.M., in Courtroom No. 2, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio. At that time, the Court will pre-try the issue of dischargeability under Section 523.

It is FURTHER ORDERED that service of this Order shall be made by the Deputy Clerk of this Court mailing copies of same to all parties in interest and counsel of record in the above adversary proceeding.