832 F.2d 390
 60 A.F.T.R.2d 87-5724, 87-2 USTC P 9592,
17 Collier Bankr.Cas.2d 650,
Bankr. L. Rep. P 72,100
 In the Matter of LaSALLE ROLLING MILLS, INC., Debtor in
Possession-Appellant.
LaSALLE ROLLING MILLS, INC., Plaintiff-Appellant,
v.
UNITED STATES of America, DEPARTMENT OF TREASURY, INTERNAL
REVENUE SERVICE, Defendant-Appellee.
 No. 86-2627.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 21, 1987.
Decided Oct. 9, 1987.
 
 Bruce Dopke, Schwartz, Cooper, Kolb & Gaynor, Chtd., Chicago, Ill., for plaintiff-appellant.
 Gary D. Gray, and Michael L. Paup, Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.
 Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court reversing an order of the bankruptcy court which granted the motion of a corporate debtor-in-possession to preliminarily enjoin the Internal Revenue Service from assessing a "responsible officer penalty" under Internal Revenue Code section 6672.[1] Because we agree with the district court that the Tax Anti-Injunction provision, 26 U.S.C. Sec. 7421(a)[2] precludes such an injunction, we affirm.
 
 
 2
 * The facts of this case are relatively straightforward and undisputed. In any event, there are no factual intricacies upon which our resolution of this case depends. Therefore, we recite the facts in summary fashion.
 
 
 3
 LaSalle Rolling Mills, Inc. ("LaSalle") is one of two corporations in the country that produces blanks used by the United States Treasury to produce pennies. It accounts for approximately 25 to 30 percent of such blanks used by the Treasury. In 1984, LaSalle fell on hard times (assertedly because the Treasury cut back by half on the amount of penny blanks it used as the result of an economic slowdown, but this is of no importance). One of the first things LaSalle did to cope with its cash flow problems was to stop paying over withholding taxes on its 65 employees.
 
 
 4
 On February 25, 1985, the Internal Revenue Service, understandably displeased with this course of action, issued a "Proposed Assessment of 100% Penalty" under section 6672 of the Internal Revenue Code of 1954 against Frederick and Cynthia Carus, who owned 100% of the stock of LaSalle and managed its affairs (including payment of taxes withheld from employees' wages). On the following day, LaSalle petitioned for bankruptcy (reorganization) under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sec. 1101 et seq.
 
 
 5
 On September 6, 1985, LaSalle filed an adversary complaint in the bankruptcy court, seeking to enjoin the IRS from assessing the penalty against the Caruses. According to the complaint, the Caruses are indispensable to LaSalle's successful reorganization, and LaSalle will be permanently and irreparably harmed unless the IRS is enjoined from assessing the Sec. 6672 penalty against the Caruses. Such harm will supposedly flow from both the time the Caruses will be required to devote to the proceedings with the IRS and from the impairment of their personal credit, which has been used in part to fund the reorganization (although several loans have been made to LaSalle, the Caruses have been required to guarantee the loans and back that guarantee with a pledge of their personal assets). If the reorganization fails, LaSalle's creditors, including the IRS, will receive less money from the bankruptcy (full payment is apparently contemplated by the reorganization), LaSalle's employees will lose their jobs and, we are told ominously, the "ability of the United States Government to produce and distribute the penny" will be "jeopardized."[3]
 
 
 6
 The bankruptcy court generally accepted LaSalle's version of the facts[4] and held that it was empowered to enjoin assessment of the penalty under 11 U.S.C. Sec. 105(a)[5] notwithstanding Sec. 7421 of the Internal Revenue Code. Noting a split of authority on the issue, the bankruptcy court held that "the better reasoned position [is] that Congress' enactment of the Bankruptcy Code evinces an intention to enact a particular statutory scheme governing bankruptcy which overrides the general policy of the anti-injunction statute." No. 85-A-1115, Mem. Op. at 4 (Bankr.N.D.Ill. March 11, 1986, nunc pro tunc to October 3, 1985). The Government appealed to the district court which, finding the better reasoned approach and the weight of authority to be otherwise, reversed.
 
 II
 
 7
 On appeal, the Government presents numerous reasons why the district court was right and the bankruptcy court wrong, including the argument that LaSalle lacks standing to contest the assessment of penalties against its officers and a defense of sovereign immunity. However, we need consider only one:[6] whether the Tax Anti-Injunction Act precludes the issuance of the injunction. We conclude that it does.
 
 
 8
 The Anti-Injunction Act, on its face, provides for several exceptions; orders by the bankruptcy court to protect a reorganization are not among them. Neither does the exception to the Act stated in Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) apply. There, the Supreme Court stated:
 
 
 9
 if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the Nut Margarine case [Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932) ], the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in "the guise of a tax."
 
 
 10
 370 U.S. at 7, 82 S.Ct. at 1129 (citation omitted). It is beyond argument that the Enochs exception does not apply to this case. The Caruses have not remotely challenged the fact that LaSalle has not paid its withholding taxes and that they are therefore liable for the Sec. 6672 penalty. They certainly have not shown that the IRS' proposed assessment "is without foundation." Id. at 8, 82 S.Ct. at 1129.
 
 
 11
 LaSalle does contend, somewhat creatively, that it falls within the recent exception announced by the Supreme Court in South Carolina v. Regan, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). We disagree.
 
 
 12
 In South Carolina v. Regan, the Court held that a suit by the State of South Carolina challenging the constitutionality, under the Tenth Amendment, of Sec. 103(j)(1) of the Internal Revenue Code, which required certain state-issued bonds to be in registered form in order for the interest to be exempt from federal income tax, was not barred by the Anti-Injunction Act. In the course of its analysis, the court stated that "Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." Id. at 378, 104 S.Ct. at 1114 (footnote omitted). LaSalle seizes upon this language, to argue that it, too, lacks an alternative remedy. Because the penalty would be assessed against the Caruses, it argues that only they can take advantage of the numerous mechanisms provided in the Internal Revenue Code, and that it should not "be required to depend on the mere possibility of persuading a third party to assert [its] claims." Appellant's Br. at 22 (quoting South Carolina v. Regan, 465 U.S. at 380, 104 S.Ct. at 1115).
 
 
 13
 South Carolina v. Regan could be distinguished for a host of reasons, including the fact that the Court construed the statute in light of a claim that barring the suit would be an unconstitutional restriction of the Supreme Court's original jurisdiction. 465 U.S. at 373 n. 9, 104 S.Ct. at 1111 n. 9; see also id. at 395-400, 104 S.Ct. at 1123-26 (O'Connor, J., concurring, joined by Powell and Rhenquist, JJ.)[7] However, we need not go far to find the feature that distinguishes South Carolina v. Regan from this case, for it appears plainly in the text of the opinion. The "alternative remedy" to which the court referred, and which was not provided, was "an alternative legal avenue by which to contest the legality of a particular tax." Id. at 373, 104 S.Ct. at 1111. LaSalle, by contrast, does not challenge the legality of the tax, nor does it appear, from the record before us, that it could do so. Instead, it seeks to avoid (or at least postpone) the assessment of that tax on grounds unrelated to whether the tax is lawful, due and owing, which it clearly seems to be. Far from wanting an alternative avenue to determine the legality of the tax, LaSalle seeks to avoid such a determination. Additionally, should LaSalle wish to challenge the withholding tax itself, it could merely pay the tax and sue for a refund. If it is the penalty, rather than the tax, which is to be challenged, the Caruses could likewise pay and sue for refund.[8]
 
 
 14
 Nor are we persuaded by LaSalle's argument that some of these remedies belong to the Caruses and would force it to rely on them to protect its interests.[9] The Caruses, as 100% owners and officers of LaSalle, are far differently situated than the unidentified and unrelated individuals upon whom the State in South Carolina v. Regan would have been forced to rely had the Supreme Court refused to entertain its suit.
 
 
 15
 Finally, there is no indication in the Bankruptcy Code that Congress intended to supercede the Anti-Injunction Act in cases of this type. Section 362(a)(8) of the Bankruptcy Code specifically provides that the automatic stay (a form of injunction) applies to "the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." Conversely, the automatic stay does not apply to "the issuance to the debtor by a governmental unit of a notice of tax deficiency." 11 U.S.C. Sec. 362(b)(8). Additionally, section 505(a)(1) allows the bankruptcy court to determine the amount of "any tax," but does not authorize an injunction. These provisions, particularly the one staying Tax Court proceedings regarding the debtor, indicate to us that Congress is capable of creating the "bankruptcy exception" LaSalle seeks without our assistance.
 
 
 16
 Our analysis is consistent with that of both of the Courts of Appeals that have so far considered the question. See A to Z Welding Manufacturing Co., 803 F.2d 932 (8th Cir.1986) (distinguishing Bostwick v. United States, 521 F.2d 741 (8th Cir.1975), which had allowed an injunction to protect the debtor from further collection efforts following discharge); In re Becker's Motor Transportation, Inc., 632 F.2d 242 (3d Cir.1980), cert. denied, 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 1341 (1981).[10] Accordingly, we join them in holding that the Anti-Injunction Act bars LaSalle's claim.
 
 
 17
 Whatever the merit of LaSalle's argument that current law allows the IRS a latitude to collect taxes owing that is incompatible with orderly administration in bankruptcy, it should be made to Congress, not to us.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 26 U.S.C. Sec. 6672 provides, in pertinent part:
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.
 The Internal Revenue Code of 1954 was in effect during the relevant time period in this case. We note that the Internal Revenue Code of 1986, as Title 26 of the United States Code is now known (Since the passage of the Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2085 (Oct. 22, 1986)) contains the same provisions insofar as relevant to this case, as the 1954 Code, there having been no amendment or repeal of the relevant sections in the Tax Reform Act of 1986.
 
 
 [2]
 26 U.S.C. Sec. 7421(a) provides that, with certain exceptions not applicable to this case, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person whether or not such person is the person against whom such tax was assessed."
 
 
 [3]
 Neither the bankruptcy court nor the district court made any finding regarding this dire prediction, but frankly, we doubt that the government will be seriously harmed. Our review of the record discloses that the Treasury Department had previously threatened LaSalle with cancellation of its penny-blank contract for failure to make timely deliveries. The treasury was thus apparently confident of its ability to find an alternative supplier. Additionally, the Treasury's willingness to let the IRS, which, after all, is an agency of the Treasury Department, pursue the Sec. 6672 penalty in such a way as to jeopardize LaSalle's continued existence is but another indication that LaSalle needs the government far more than the government needs it
 
 
 [4]
 The IRS presented no evidence but merely argued, as it does here, that the bankruptcy court lacked the power to enter the injunction. Given our disposition of this appeal, we may assume the correctness of the bankruptcy court's factual conclusions
 
 
 [5]
 11 U.S.C. Sec. 105(a) provides, in pertinent part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The section was amended by Pub.L. No. 99-554, Title II, Sec. 203, 100 Stat. 3097 (October 27, 1986) in respects not relevant to this appeal
 
 
 [6]
 While the government makes two jurisdictional arguments, i.e., that LaSalle lacks standing and that the bankruptcy court possesses no positive grant of jurisdiction to enter orders protecting the debtor's principals, the Anti-Injunction statute itself "withdraw[s] jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 5, 82 S.Ct. 1125, 1128, 8 L.Ed.2d 292 (1962). Thus, while we ordinarily must resolve questions of jurisdiction before proceeding to discuss other issues, we are here presented with three alternative jurisdictional questions. We address only the question involving the Anti-Injunction Act because it is relatively straightforward, avoids deciding a constitutional question (Article III standing), and provides the narrowest ground for decision. We realize one of our sister circuits has decided the question of whether the Bankruptcy Code would provide jurisdiction if the Anti-Injunction statute were no bar. See United States v. Huckabee Auto Co., 783 F.2d 1546 (11th Cir.1986). However, at least as the government reads Huckabee and other cases relied upon by the government, such a ground could have far-reaching consequences. The government essentially contends that the bankruptcy court never has the power to issue orders enjoining actions against corporate principals, even though those actions pose a danger to corporate reorganization. We have sufficient doubts about this broad question, including possibly unforseen and untoward consequences it could have for bankruptcy administration, that we prefer to rest our decision on the Anti-Injunction Act
 
 
 [7]
 Both the opinion of the court and the concurring opinion also suggested that, in appropriate circumstances, a complete bar of judicial review of tax questions affecting parties against whom a tax is not assessed might raise due process concerns. See id. at 375, 104 S.Ct. at 1112 (citing Bob Jones University v. Simon, 416 U.S. 725, 746, 747 n. 21, 94 S.Ct. 2038, 2050, 2051 n. 21, 40 L.Ed.2d 496 (1974)); id. at 394, 104 S.Ct. 1122 (O'Connor, J., concurring, joined by Powell and Rhenquist, JJ.) (citing Bob Jones University ). LaSalle has raised no Due Process argument and, for reasons similar to those expressed in the text, i.e., there are avenues for judicial relief, we doubt such an argument could be maintained
 
 
 [8]
 The government asserts that a refund suit could be maintained by paying merely the tax liability associated with one employee for one quarter and following the appropriate administrative claim procedures before instituting suit. Gov't. Br. at 18 n. 6, 31, 34 (citing Steele v. United States, 280 F.2d 89 (8th Cir.1960)). So far as we can determine, this Circuit has not passed on the question decided in Steele, which holds that taxes such as the ones involved in this case are "divisible" for purposes of the "full payment rule" announced in Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958) and Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); see also Enochs, 370 U.S. at 5, 82 S.Ct. at 1128; cf. Merhow Industries v. United States, 517 F.Supp. 1221 (N.D.Ind.1981) (discussing origin of rule and holding, in excise tax case, that amount attributable to a single transaction in each quarter for which assessments are challenged must be paid as prerequisite to suit). Of course, we would expect the government to adhere to this position in any subsequent refund suit in this case. It may well be that the government is comfortable with this position because as it asserts, there does not currently appear in the record before us any basis for a refund suit. Of course we express no opinion whether LaSalle or the Caruses may have some basis, not disclosed in the record before us, to challenge the assessments in an appropriate proceeding, but we strongly caution against the use of frivolous refund suits for purposes of delay and note that such conduct by a taxpayer would be sanctionable
 
 
 [9]
 Both parties inform us that the longstanding policy of the IRS is to collect the amount of the unpaid withholding tax only once. That is, to the extent the corporation pays, the responsible person is relieved of liability for the penalty and vice versa. Accordingly, LaSalle could avoid the assessments against the Caruses by paying the tax. We realize that LaSalle may either lack the financial wherewithal to pursue such a course or be precluded from doing so by its fiduciary duties as debtor-in-possession. That the remedy available to LaSalle may be inadequate in this particular case does not change the fact that there is an alternative remedy, as a general matter, for parties such as LaSalle to avoid distraction and financial hardship to their principals. Nor does it allow us to abrogate the Anti-Injunction Act. Cf. Enochs, 370 U.S. at 6, 82 S.Ct. at 1129 (A suit for injunction may not be entertained "merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise.")
 
 
 [10]
 The bankruptcy and district courts which have so far considered the question are split. Compare, e.g., United States v. Rayson Sports, Inc., 44 B.R. 280 (N.D.Ill.1984) with United States v. Spector, 53 B.R. 1014 (W.D.Mo.1985)