**In re TENTEX MARINE, INC., Debtor.**

**Bankruptcy No. 80-22856-B.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Feb. 12, 1988.

Robert A. Udelsohn, Memphis, Tenn., for debtor.

William C. Bell, Jackson, Tenn., for Jimmy T. Wood.

Lewie Polk, Memphis, Tenn., for William Walters.

Greg Nelson, Tax Div. U.S. Dept. of Justice, Washington, D.C.

Gary A. Vanasek, Memphis, Tenn., Asst. U.S. Atty.

**MEMORANDUM OPINION AND ORDER ON DEBTOR'S MOTION TO OBTAIN DETERMINATION OF THE COURT AS TO APPLICATION OF PAYMENT OF PRIORITY FUNDS**

WILLIAM H. BROWN, Bankruptcy Judge.

The Debtor, Tentex Marine, Inc., (hereinafter "Debtor"), filed a motion on Decem-

ber 1, 1987, on which a hearing was held January 11, 1988, the said motion asking the court to determine and designate an allocation of payments to the United States of America as a priority creditor, the thrust of the motion being to permit the Debtor to allocate the first funds payable to the Internal Revenue Service to the trust fund portion of taxes due and owing to the United States. The United States Department of Justice and the United States Attorney for the Western District of Tennessee have responded in opposition to the said motion. Briefs have been submitted by the parties. Testimony was taken from the disbursing agent of this estate and from Jimmy T. Wood, a representative of the Debtor.

This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A), (B) and (O); therefore, the court will make final findings of fact and conclusions of law pursuant to 28 U.S.C. Section 157(b)(1). This memorandum opinion and order contains findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## CASE HISTORY AND FACTUAL FINDINGS

This case was filed as a voluntary Chapter 11 by the Debtor in 1980. There has been extensive activity in the case, culminating in a confirmed plan. An order confirming the second amended plan of reorganization of the Debtor was entered on February 19, 1981. The second amended plan of the Debtor contains a classification of claims including Class II as "tax claims of governmental units to the extent they are entitled to priority under 11 U.S.C. Section 507(a)(6)." Because of amendments to the Bankruptcy Code, Section 507(a)(6) is now Section 507(a)(7). The treatment of the classification in the confirmed plan provides that "tax claims of governmental units entitled to priority under 11 U.S.C. Section 507(a)(6) shall receive deferred cash payments over a five-year period from the date of assessment of the claims, with interest as provided in the Internal Revenue Code." The second amended plan has undergone several post-confirmation amendments. Ultimately, the fourth amendment to the confirmed plan, and subsequent or-

ders thereto, led to an order of December 2, 1983, which order permitted the sale of substantially all of the assets of the Debtor to Fullen Farms, Inc., said sale being out of the ordinary course of business. 11 U.S.C. Section 363(b)(1). The case file indicates that the Debtor had filed a prior motion on February 15, 1985, asking the court to determine the proper distribution to priority creditors and to also decide other matters unrelated to the present proceeding. An amended order on that motion was entered on August 23, 1985, said order reflecting that the United States of America objected to the Debtor designating any allocation of its tax payments to the federal government. That order determined that $6,125.89 was allowed as an administrative expense for the United States and that all other governmental priority claims, exclusive of the remaining priority claim of the United States, were approved. The amount of the United States priority claim was also approved (at $87,850.22); however, the question of allocation to the trust fund portion was "reserved for a later determination by the court." All prior orders confirming the plan and referred to hereinabove were entered by the Honorable William B. Leffler, former Chief United States Bankruptcy Judge.

Obviously, the reserved question was never ruled upon by Judge Leffler and was re-presented to the court in the motion filed on December 1, 1987. The confirmed plan itself did not provide for an allocation of the United States' taxes between trust fund and non-trust fund portions. This subject appears to first have been raised in the Debtor's motions.

Subsequent to confirmation, testimony and documents filed with the court reflect that the pre-confirmation officers of the debtor, Jimmy T. Wood and William Walters, paid the "one hundred percent penalty" to the Internal Revenue Service. 26 U.S.C. Section 6672. Mr. Jimmy T. Wood paid a total of $42,811.67 on December 23, 1985, and Mr. William Walters paid $24,823.45 on January 15, 1986, both in full satisfaction of their respective one hundred percent penalties imposed. *See* 26 U.S.C.

Section 6671(b) (defining persons liable for the penalty.) The Internal Revenue Service has applied those penalty payments to the total tax obligations owing by the Debtor, thereby reducing the claims against this estate. After application of these penalty payments, the Internal Revenue Service is owed, in addition to the administrative expense described hereinabove, $8,929.37 for the fourth quarter of 1979 and $6,182.89 for the first quarter of 1980. These outstanding balances owing represent the Debtor's employer portion of pre-petition FICA taxes. There may be other priority taxes due the Internal Revenue Service, as referred to later in this opinion.

The Debtor's original motion in this matter specifies the priority claims filed and the amounts thereof as follows: Claim Number 20, Department of Employment of Tennessee—$934.13; Claim Number 22, Shelby County Trustee—$17,998.20; Claim Number 23, City of Memphis—$17,078.66; Claim Number 25, as amended by Claim Number 31, Tennessee Department of Revenue—$91.92; Claim Number 26, as amended by Claim Number 50, Tennessee Department of Revenue—$14,660.60; Claim Number 28, Internal Revenue Service, amended by Claims Number 45 and 46—$104,846.33 (this claim seems to include interest and apparently has been reduced and amended by the Internal Revenue Service as indicated by documents filed in relationship to the present motion); Claim Number 48, City of Memphis—$6,000.00. At the time the Debtor first filed its motion for determination of the priority distributions, there were insufficient funds on hand to pay all priority claims; therefore, a pro rata distribution would have been made. Such a pro rata distribution would still be necessary, if the Debtor were successful in its motion to permit the Debtor to allocate its first payment to trust fund taxes.

Although the Debtor does not clearly specify this in its motion, it is implicit in the Debtor's motion that what the Debtor really seeks is to subrogate Jimmy T. Wood and William Walters to the trust fund position of Internal Revenue Service. If allocation to the trust fund portion is permitted by the Debtor, then again it is implicit in the Debtor's motion that Wood and Walters would be re-paid at least a pro rata portion of their one hundred percent penalty payments, which satisfied the trust fund portion of the tax liability. On the other hand, if the objections of the Internal Revenue Service are sustained, there are apparently sufficient monies on hand to pay all administrative and priority taxes, including the remaining Internal Revenue Service taxes and other allowed priority claims, in full. The testimony of Mr. Newman, the disbursing agent, was that he had on hand approximately $103,000.00 as of September 30, 1987. It is not clear how much the total remaining claims of the Internal Revenue Service are. In a supplemental letter dated February 8, 1988, the Assistant United States Attorney stated that the balance of its priority claim was $39,865.33, plus interest. If the parties are unable to agree on the balances due the Internal Revenue Service, a further hearing on that issue may be requested.

The unsecured creditors have previously been paid a small distribution in this case, which was made from the receipt of proceeds from the sale of the Debtor's assets to Fullen Farms, Inc. In order to obtain the consent to such a sale by unsecured creditors, a compromise was reached by the Debtor with the unsecured creditors, resulting in the payment of $67,000.00, pro rata, among the allowed claims of unsecured creditors, notwithstanding the fact that priority claims had not yet been paid. This provision is contained in the order of December 23, 1983, entered by Judge Leffler, permitting the sale of the assets to Fullen Farms, Inc. In that same order, "approximately $91,597.00" would be retained for distribution to priority creditors "in accordance with the priority provisions of the Bankruptcy Code." That fund has grown, through interest, to its present amount. The sale proceeds also satisfied secured creditors, some administrative expenses, and $1,231,197.00 in bonds which had been issued for the Debtor. This order was approved by counsel for the Debtor, secured creditors, and the unsecured credi-

tors committee, but not by the Internal Revenue Service or United States Attorney. However, apparently, the government's counsel were aware of the entry of the order as evidenced by a written objection to the entry of a proposed order permitting the consummation of the sale to Fullen Farms, filed on November 10, 1983. Contained in that objection is the assertion that the claims of the United States are priority claims to be paid before payment of any unsecured creditors.

## CONCLUSIONS

At the oral hearing on the contested matter sub judice, Debtor's counsel took the position that this court should permit allocation by the Debtor of the Internal Revenue Service's claims to the trust fund portion, and Debtor's counsel, along with counsel for Mr. Wood and Mr. Walters, referred the court to the authority of *In re B & P Enterprises, Inc.*, a decision from this district by the Honorable David S. Kennedy. 67 B.R. 179 (Bkrtcy.W.D.Tenn.1986). The Debtor, Mr. Wood, and the Internal Revenue Service filed excellent briefs in this matter, addressing the allocation issue. However, the court has concluded that the issue before the court is not one of allocation but one of subrogation.

*In re B & P Enterprises, Inc.* concerned jointly administered Chapter 11 cases in which the debtors sought to "allocate payments under a joint Chapter 11 reorganization plan" so that the trust fund portion of Internal Revenue Service claims would be credited first. This allocation was provided in the debtor's plan itself, and the joint plan was confirmed, with the allocation matter reserved by consent of the debtors and the Internal Revenue Service. *B & P Enterprises* discussed voluntary tax payments to the Internal Revenue Service, in which the nonbankruptcy taxpayer may designate, at the time of payment, an allocation among tax, interest and penalty, as distinguished from an involuntary payment under which a taxpayer may not designate the manner of allocation. 67 B.R. at 181–182. *See, Muntwyler v. United States*, 703 F.2d 1030 (7th Cir.1983) (for a discussion of the taxpayer's ability to designate the tax liability to which a voluntary payment may be applied.) The policy considerations were discussed and the court concluded in *B & P Enterprises* that it would not "adopt a per se or inflexible rule that the mere filing of a Chapter 11 case and the ensuing confirmation process, standing alone, should automatically disallow (or allow) a trustee or debtor—taxpayer to allocate payments under a plan to the I.R.S." 67 B.R. at 183. Various factors were adopted by the *B & P Enterprises* court, as subjects to be considered by the court in a "case by case" analysis, with the "burden of proof being on the trustee or Chapter 11 debtor-taxpayer to demonstrate exceptional or special circumstances for equitable reasons warranting such allocation." The facts of the present case are clearly and immediately distinguishable from *B & P Enterprises.* In *B & P Enterprises* the allocation was a part of the confirmed plan, indicating that the debtors had initially and consistently intended to allocate payments to the trust fund portion. The same is not true in this case. Here, the Debtors in their confirmed plan proposed to pay tax claims in full, with deferred payments and interest to be made. It was obviously not contemplated in the confirmed plan that the principals of this Debtor corporation would pay the one hundred percent penalty.

The case file indicates that no action was taken in this court to prevent the Internal Revenue Service from proceeding to collect the one hundred percent penalty from the two officers. The court does not suggest that such collection efforts could have been prevented. *See, e.g, In the Matter of La-Salle Rolling Mills, Inc.*, 832 F.2d 390 (7th Cir.1987) (holding that the tax anti-injunction provision of the Internal Revenue Code, 26 U.S.C. Section 7421(a), precluded the bankruptcy court from enjoining the Internal Revenue Service from assessing responsible officers of the debtor corporation.) The fact remains that, post-petition and post-confirmation, the Internal Revenue Service did assess and collect from Wood and Walters a one hundred percent penalty, which payments were to the direct benefit of this Debtor's estate, reducing

the liability of the Debtor corporation. Further, the court notes that the language of the order allowing the sale of the Debtor's assets, which sale yielded the funds on hand, contained the provision that the funds retained for priority creditors were for "distribution to priority creditors in accordance with the priority provisions of the Bankruptcy Code."

■ The priority provisions of the Code are 11 U.S.C. Section 507 which includes Section 507(d). That section states as follows:

> An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

As previously referred to, because of amendments to the Code, Section 507(a)(6) is now (7), and this re-numbering was not changed in 507(d), as it obviously should have been. *See,* 3 Collier on Bankruptcy, paragraph 507.07 (15th Ed.1987); *In re All Star Sports, Inc.,* 78 B.R. 281 (Bkrtcy.D. Nev.1987); *Dubose v. Kaczmarski,* 22 B.R. 780, 7 C.B.C.2d 169 (Bkrtcy.N.D.Ohio 1982).

Section 507(d) addresses subrogation rather than assignment, and subrogation is an equitable doctrine "based on common law principles and includes every instance in which one party pays the debt for which another is responsible so long as the payment was made under compulsion or to protect the party making the payment and in discharge of some existing liability." 3 *Collier on Bankruptcy, supra,* at paragraph 507.07. Clearly, the payments by Wood and Williams result in subrogation rather than assignment claims, because both Wood and Williams paid a debt of the Debtor corporation, on which they were also responsible as principals of the Debtor, and the said penalty payments were made under compulsion from the Internal Revenue Service, in discharge of the principals' existing liability. *See, In re Missionary Baptist Foundation of America, Inc.,* 667 F.2d 1244 (5th Cir.1982) (distinguishing subrogation from assignment in reference Section 507(d)). Therefore, the court concludes that 11 U.S.C. Section 507(d) is applicable and is controlling in the instant case.

The Court is not bound by *In re B & P Enterprises,* simply because that case is not on point to the instant case. Further, the court does not need to discuss the diverging views on the subject of allocation in Chapter 11 plans by debtors. *See, e.g., In re Technical Knockout Graphics, Inc.,* 833 F.2d 797 (9th Cir.1987) (holding that the Internal Revenue Service is entitled to apply a Chapter 11 debtor's pre-confirmation payments as the Service sees fit); *In the Matter of Ribs–R–Us,* 828 F.2d 199, 204 (3rd Cir.1987), (concluding that "payments to the IRS on prepetition priority tax liabilities by the debtor in reorganization under Chapter 11 of the Bankruptcy Code are involuntary and therefore cannot be allocated by the debtor" to trust fund liability). *Cf. In re A & B Heating and Air Conditioning,* 823 F.2d 462, 465 (11th Cir.1987) (persuaded by the reasoning of *B & P Enterprises* to leave the allocation question to a bankruptcy court's "judicial discretion to be decided by a case-by-case basis."); and *In re Professional Technical Services, Inc.,* 80 B.R. 157, 161 (Bkrtcy.E. D.Mo.1987) (adopting the position that "payment of taxes under a debtor-in-possession plan . . . are voluntary.")

The debate over voluntary versus involuntary payments is not relevant here, because the Debtor has not made the trust fund payment; rather, the officers have. Moreover, use of the standards of *B & P Enterprises* do not favor this Debtor. Under the factors of *B & P Enterprises,* the history of this case reveals a Debtor which proposed a plan containing no provisions of allocation. The allocation question arose post-confirmation. At the time of confirmation, the Debtor was intending to retain its assets, receive income, and pay its creditors in accordance with the plan. Post-confirmation, the Debtor discovered that it was necessary to sell its assets, no longer remaining in business, and to liquidate both its assets and debts. Over the objection of the Internal Revenue Service, the Debtor succeeded in paying a pro rata distribution to unsecured creditors, prior to the Internal

Revenue Service and other priority creditors being paid at all. Post-confirmation and without any required action from this court, the Internal Revenue Service proceeded to collect its one hundred percent penalty payments from two officers of the Debtor. Those payments were made by the officers to satisfy their responsibility as principals and officers of the Debtor under the Internal Revenue Code, but those payments benefited this estate. *Cf. In re Professional Technical Services, Inc. supra*, at 161 (in which that court noted that IRS had chosen not to pursue the corporate officers). The Internal Revenue Service has stated to this court that the one hundred percent penalty payments satisfied the trust fund portion of the taxes in full and that only the employer liability remains. Under its post-confirmation efforts, the Debtor intended to pay only a pro-rata distribution to priority creditors, satisfying none of them in full. However, the Debtor is now capable of paying, from funds on hand, all priority creditors in full.

Under *B & P Enterprises*, this debtor has failed to show "exceptional or special circumstances" to justify allocation. The equities do not favor allowing the Debtor to allocate payments at this stage of the proceedings, to the detriment of priority creditors which, under the Code, should have received payment prior to unsecured creditors being paid anything. Further, the equities do not favor the officers of the Debtor receiving any funds to the detriment of priority creditors. At hearing, Mr. Wood argued that it was only through the efforts of Wood to sell the assets of the Debtor that the funds were available to pay taxes. The thrust of that argument is misguided. The Debtor had an obligation to achieve a maximum realization for assets. Had the officers declined to assist in such a realization, Mr. Wood and Mr. Walters, as officers, would still have been left with their personal liability on the trust fund taxes. The equities of the case, as well as the purposes of the Code, including Section 507, dictate that the Debtor, having available funds, pay its priority claims in full.

Quite simply, it is too late in this case for allocation by the Debtor. If anything, the history of this case illustrates why allocation by a debtor may not be favored. The Debtor's plan, which proposed full priority payments, did not succeed. Had this Debtor obtained a confirmed plan which proposed an allocation first to the trust fund portion of taxes and assuming a pro rata payment, the Internal Revenue Service would have been injured, in the absence of recourse to the officers. *See, In re Technical Knockout Graphics, Inc. supra*, at 801. The result of Section 507(d) is conclusive on this matter. Jimmy T. Wood and William Walters are simply precluded by the Code from being subrogated to the priority position of the Internal Revenue Service. *See, e.g., In the Matter of Barefoot Sports, Inc.*, 61 B.R. 546 (Bkrtcy.W.D. Wisc.1986).

■ Both Wood and Walters may be subrogated to the position of the Internal Revenue Service, to the amount of their payments of priority claims, in that Wood and Walters both may now have unsecured claims for the amounts they paid. *In re Spruill*, 78 B.R. 766, 16 B.C.D. 724, 726 (Bkrtcy.E.D.N.C.1987). However, the question of whether Wood and Walters are unsecured creditors and as such may receive a pro-rata distribution, along with the other unsecured creditors of this Debtor, is not properly before the court. One bankruptcy court has recently held that officers in the position of Wood and Walters are not allowed indemnification or contribution from the debtor corporation. *In re All Star Sports, Inc. supra*. The theory is that the penalty obligation imposed on officers is a separate liability from that of the corporation. The court is not ruling upon the amount of distribution to the unsecured creditors at this point, because the prior order of this court may or may not have fixed the maximum payment to unsecured creditors at $67,000.00. If the maximum payment to unsecured creditors was $67,-000.00, Wood and Walters may be foreclosed from any recovery. Further, payments of the subrogation claims of Wood and Walters will be affected by Sections 502(e) and 509. The court has not been asked to

rule on the allowance of any unsecured claims of Wood and Walters, and the court declines to do so at this time. This subject needs to be more fully addressed by the Debtor, unsecured creditors committee and other affected parties, if Wood and Walters pursue their claims.

## SUMMARY AND HOLDING

From all of the facts of this case, including the entire case history, plan, order permitting sale, motions, and briefs, the court finds and concludes that 11 U.S.C. Section 507(d) is controlling and that said section precludes the Debtor from now attempting to allocate priority payments which would result in the payment to Wood and Walters of their trust fund or one hundred percent penalty taxes already paid. Specifically, 507(d) precludes Wood and Walters from being subrogated to the priority position of the Internal Revenue Service. Wood and Walters may have an unsecured claim for the amounts of taxes they paid, but not a priority claim.

Further, the court concludes that based upon all facts and circumstances of this case, the disbursing agent should immediately pay the administrative claim to the Internal Revenue Service in the amount of $6,125.89. If any remaining administrative expenses, including court costs, are due and owing, and if the same have been approved by the court, they shall be promptly paid. Any administrative expenses which are due and owing but have not yet been approved by the court should promptly be submitted to the court for approval. After the payment of administrative expenses, the disbursing agent is to pay the allowed priority claims of all priority creditors, including the remaining priority claims of the Internal Revenue Service, in full. Thereafter, if any funds are remaining, the amount thereof shall be reported to the court by the disbursing agent, so that the court may specifically determine, upon further notice and hearing, the disbursement of remaining funds. Distribution to administrative and priority creditors is to be made in compliance with Section 507, and distribution of property of this estate is generally to be made in compliance with

Section 726. A copy of the disbursing agent's report shall be given to the Debtor and all interested parties. At that time, the court will entertain a motion from the Debtor for the distribution of any remaining funds. This estate needs to be closed promptly, and distribution is to be made in accordance with this order within fifteen (15) days after the entry hereof.