CUMMINGS, Chief Judge.
 

 The issue in this case is whether a co-tenant of real property is entitled to subrogation under Section 509(a) of the Bankruptcy Code for payments he made to creditors on behalf of another co-tenant who subsequently petitioned for bankruptcy, where the co-tenants are parent and child and had not entered into a written agreement for repayment. The district court denied sub-rogation on the rationale that the pre-petition payments to creditors constituted a gift from father to son. This Court holds that those payments by the father were necessitated by his legal obligation to avoid forfeiture of the property he held as a tenant in common, and that this obligation predominates over any donative motivation to benefit the son. We therefore reverse that aspect of the district court's order denying subrogation for the pre-petition payments.
 

 I
 

 In March 1974 plaintiff James Bugos and his son David agreed to purchase a 185.9-acre farm in Henry County, Illinois, from Elizabeth and LaVerne Plunkett. The agreement for sale of that real estate lists James and David Bugos as co-vendees, provides a payment schedule, and gives the Plunketts the right to re-enter and take possession in the event of a forfeiture. One month later the Bugoses assigned an undivided one-half interest in the farm to a Mr. and Mrs. Langenfeld, with each pair to pay one-half of the purchase price. In 1980 a dispute arose between the Bugoses and Langenfelds prompting the Bugoses to cancel the March 1974 agreement with the Plunketts and the Bugoses’ partial assignment to the Langenfelds. The Bugoses and Langenfelds then entered into separate contracts with Elizabeth Plunkett, the Bu-gos contract again naming James and David as co-vendees, this time for 70 acres of the farm. The purchase price in this contract is $17,375, the balance due after purchase payments since 1974. Prior to 1980 James and David had shared equally all contract payments and other farm expenses except for two contract payments to the Plunketts totalling $5,000. The two payments were the initial down payment to LaVerne Plunkett in March 1974 for $3,000 (the Langenfelds remitting to the Bugoses one-half the amount or $1,500) and a contract payment to LaVerne Plunkett’s estate in August 1975 for $3,500. Plaintiff’s Br., pp. 7-8.
 

 In 1980 David began experiencing financial difficulty, necessitating James to bear the full expense of the following:
 

 Date Description Amount
 

 9/9/80
 

 to
 

 1/16/81 Land clearing, tiling, etc. $8,238.37
 

 5/28/82 Interest on contract 1,399.15
 

 7/20/82 Real estate taxes 438.16
 

 9/3/82 Appraisal of 70 acres 160.80
 

 12/1/82 Principal on contract 2,000.00
 

 12/1/82 Interest on contract 608.13
 

 Plaintiff’s Br., p. 8. Together with the pre-1980 contract payments, the total
 
 *733
 
 amount James has paid in excess of David’s contribution is $17,844.61.
 

 David filed for bankruptcy on June 9, 1982,
 
 i.e.,
 
 just subsequent to the interest payment of May 28, 1982. It is undisputed that David’s undivided one-half interest in the 70 acres is part of the bankruptcy estate pursuant to 11 U.S.C. § 541. Plaintiff James Bugos challenged the trustee’s determination that plaintiff was not entitled to subrogation for all the amounts he paid on David’s behalf. Plaintiff argued in bankruptcy court that under 11 U.S.C. § 509 (quoted
 
 infra)
 
 he was entitled to reimbursement for one-half of the total of $17,844.61.
 
 [1]
 
 Bankruptcy Judge Lipkin disagreed, holding that all the payments plaintiff made on David’s behalf were gifts to him and that plaintiff was therefore not entitled to subrogation. Plaintiff appealed to the district court, which affirmed as to the pre-petition payments and reversed as to the remainder. The district court held that plaintiff was entitled to subrogation for the post-petition payments of real estate taxes, appraisal costs, and contract payments, remarking that “[i]t cannot be said that they were intended as a gift since David had already filed his petition in bankruptcy.”
 
 [2]
 
 With respect to the pre-petition payments, the district court affirmed the bankruptcy court’s finding that the payments were gifts, so that plaintiff was not entitled to subrogation as to them. The district court applied
 
 Moore v. Moore,
 
 9 Ill.2d 556, 138 N.E.2d 562 (1956), for the proposition that when a parent purchases property and takes title in both his name and that of his child, there is a presumption that a gift was intended for the child. According to the district court, this presumption can only be rebutted by clear and convincing evidence, which the court found lacking. The only person to testify at the hearing before the bankruptcy court was plaintiff’s wife Marian, who testified that the father and their son had orally agreed to share the expenses on the land and that any payments by James of David’s share were to be repaid by David. The court found this testimony unconvincing given that no written agreement to repay had been entered into, James had made no demand for repayment, and David had not repaid James during the 1975-1980 pre-bankruptcy period for his share of the $5,000 in contract payments to LaVerne Plunkett and his estate.
 

 Plaintiff appeals from the district court’s gift holding in regard to the pre-petition payments.
 
 [3]
 
 His subrogation right for the post-petition payments is not an issue on appeal. We reverse that portion of the district court’s order denying subrogation for the pre-petition payments.
 

 II
 

 As the Supreme Court observed in
 
 American Surety Co. v. Bethlehem National Bank,
 
 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241, “Among the oldest of these [equitable doctrines] is the rule of subrogation whereby one who has been compelled to pay a debt that ought to have been paid by another is entitled to exercise all remedies which the creditor possessed against the other.” Section 509(a) of the Bankruptcy Code provides for subrogation as follows:
 

 Except as provided in subsection (b) and (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.
 

 
 *734
 
 11 U.S.C. § 509(a).
 
 [4]
 
 “Subrogation is not a matter of strict right but is purely equitable in nature, dependent upon the facts and circumstances of each particular case.”
 
 In re Co-Build Companies, Inc.,
 
 21 B.R. 635, 636 (Bankr.E.D.Pa.1982).
 

 D. Cowans, Bankruptcy Law and Practice § 12.29 (1983 Interim Edition), adeptly explains subrogation in bankruptcy:
 

 Certain entities may be liable to a creditor along with the debtor. A guarantor, a surety, a co-signer, a joint venturer, a joint tort-feasor, an endorser and perhaps other persons may have a legal obligation to pay the creditor. A person who gives the creditor collateral for the obligation the debtor has a liability for may likewise be in a position of having to satisfy the creditor. Bankruptcy law does not create such liabilities nor does it create the right of such person to reimbursement from the debtor. They are a matter of non-bankruptcy law. The bankruptcy law provides a general rule that to the extent that such person or entity satisfies the creditor he or she becomes subrogated to the right the creditor has against the debtor.
 

 As the language of Section 509(a) indicates, one may be entitled to subrogation if originally liable “with the debtor on” the claim,
 
 i.e.,
 
 the plaintiff was “compelled to pay a debt,”
 
 American Surety Co., supra,
 
 314 U.S. at 317, 62 S.Ct. at 228; see also
 
 United States v. Commonwealth of Penn., Dept. of Highways,
 
 349 F.Supp. 1370, 1379 (E.D.Pa.1972) (surety who paid principal’s debt entitled to subrogation in principal’s bankruptcy because surety was liable for the debt);
 
 In re Alloway,
 
 37 B.R. 420, 423-424 (Bankr.E.D.Pa.1984) (debtor’s former wife who was secondarily liable on husband’s tax obligation entitled to subro-gation for satisfying the obligation).
 

 Applying these principles to the instant case, this Court holds that plaintiff is also entitled to subrogation as to his pre-pe-tition payments. Under Section 509(a) of the Bankruptcy Code,
 
 supra,
 
 plaintiff was “liable with the debtor on * * * a claim of a creditor”,
 
 viz.,
 
 the claims of the Plunketts as vendors under the real estate agreement and the claims of creditors for land clearing and other farm expenses incurred in 1980 and 1981. Plaintiff paid “such claim[s];” therefore, without more, he is subrogated to their rights,
 
 viz.,
 
 plaintiff may assert against the estate whatever claim they would have had if he had not satisfied their claim.
 
 [5]
 

 Plaintiff’s right to subrogation is supported by the district court’s conclusion that plaintiff satisfied the claims not as a volunteer but as one who was jointly liable for their satisfaction. Between March 1974 and August 1980 David Bugos paid his one-half share of all contract payments and other farm expenses, except for the two contract payments mentioned earlier. The evidence indicates that plaintiff paid David’s share only to the extent David was unable to pay. Had plaintiff not satisfied the contract payments, a forfeiture would have resulted under paragraph 11 of either the 1974 contract for the 185.9 acres (Ex. 1) or the 1980 contract for the 70 acres (Ex. 4). Although plaintiff owns only a one-half interest in the land, as co-tenant he has an undivided one-half interest; thus a forfeiture would give the Plunketts as vendors the right to take possession of the entire premises. And even if the vendors had elected to sue for the deficiency rather than re-enter and take possession of the premises, plaintiff as co-vendee would have been jointly and severally liable for the
 
 *735
 
 deficiency occasioned by David’s inability to pay.
 

 Further, under paragraph 18 of the 1980 real estate contract (Ex. 4), had plaintiff permitted a lien to be placed on the premises, he would have breached a covenant to avoid such liens. Although the record does not disclose the nature of the agreement between the Bugoses and the land-clearing creditors, it is quite possible that one or more of these creditors would have sought a lien on the premises had James not paid David’s share of the land-clearing expenses. In sum, because plaintiff was jointly liable on the real estate contract, he is entitled to subrogation for his remittance of David’s share of the pre-petition contract payments and farm expenses.
 

 The basis of the district court’s contrary pre-petition gift holding,
 
 Moore v. Moore,
 
 9 Ill.2d 556, 138 N.E.2d 562 (1956), does not involve subrogation rights and therefore is not squarely applicable to this case. In
 
 Moore,
 
 plaintiff’s mother purchased property, the deed to which named the mother and plaintiff’s siblings as joint tenants. Upon the death of the mother, plaintiff disputed the vesting of the property in the siblings and claimed that the property belonged to the mother’s estate by virtue of a resulting trust. The court disagreed, holding that the property interests created by the mother in favor of plaintiff’s siblings are presumed to be gifts. 9 Ill.2d at 558, 138 N.E.2d at 564.
 

 The presumption of a gift when property is purchased in the name of a family member was perfectly sound in
 
 Moore
 
 but is inapposite to the instant scenario,
 
 [6]
 

 viz.,
 
 where a co-debtor is compelled to pay more than his share in satisfying creditors to avoid potential forfeiture. If any presumption were to apply, it would be the rule under Illinois law that “where one tenant in common relieves the property of a burden, pays a lien or pays taxes he is entitled to contribution from the other tenants in common.”
 
 Kratzer v. Kratzer,
 
 130 Ill.App.2d 762, 768, 266 N.E.2d 419 (4th Dist.1971). This principle is well established under Illinois law. See,
 
 e.g., Heineman v. Hermann,
 
 385 Ill. 191, 199, 52 N.E.2d 263 (1943);
 
 Carter v. Penn,
 
 99 Ill. 390, 395 (1881);
 
 Wilton v. Tazwell,
 
 86 Ill. 29, 31 (1877).
 

 Plaintiff was compelled under risk of forfeiture to remit David Bugos’ portion of principal and interest payments and payments to other creditors, and plaintiff paid David’s share only in the event that David was unable to pay. Of course the pre-petition payments by James were not devoid of any donative motivation, since James must have realized that David might not be able to reimburse him in the future and did not hold his son to any firm repayment schedule. Yet any donative motivation on James’ part is overshadowed by the fact that James was directly liable for the debts, and that failure to satisfy the debts could have prompted foreclosure on his jointly held property.
 

 The testimony of Marian Bugos before the bankruptcy judge lends further support to the conclusion that James’ payment of David’s share was not intended as a gift:
 

 It was just that when he could pay, he did. Like on the contract he made payments for six years in a row. He paid everything equally, Jim and him, when he could. But then when [David’s hogs] got pseudorabies and he got in trouble, he couldn’t pay any longer and we started making the payments with the understanding that once he got back on his feet he would pay us back.
 
 [7]
 
 (Trial Transcript, p. 18).
 

 
 *736
 
 Finally, James Bugos’ intention to be reimbursed is evidenced by the fact that in 1981 the farm was rented to a third party and the rental payments of $4,000 were kept entirely by James. The $2,000 retained by plaintiff in excess of plaintiff's one-half share must be subtracted from whatever amount plaintiff ultimately is entitled to through subrogation.
 

 Ill
 

 In sum, that portion of the judgment of the district court denying as gifts plaintiff subrogation for prepetition payments on behalf of David Bugos is reversed.
 

 [1]
 

 . The precise figure pled in the district court was actually $17,903.56, plaintiff apparently recalculating the land-clearing expenses on appeal resulting in a reduction of $58.95. The trustee does not dispute the accuracy of these figures.
 

 [2]
 

 . District Court Order, p. 4 (reproduced in Plaintiffs App.).
 

 [3]
 

 . Plaintiff also requests 12% interest on the amount of David’s share paid by James. This request was properly rejected because plaintiff
 
 *734
 
 did not introduce evidence that David intended to repay plaintiff at 12% interest.
 

 [4]
 

 . The equitable principle of subrogation applies to the satisfaction of debts by a co-debtor prior to bankruptcy as well as to the post-petition satisfaction of debts. See
 
 In re Missionary Baptist Foundation of America, Inc.,
 
 667 F.2d 1244 (5th Cir.1982);
 
 In re Alloway,
 
 37 B.R. 420, 423 (Bankr.E.D.Pa. 1984);
 
 In re Parker,
 
 10 B.R. 562, 565 (Bankr.M.D.Ala.1981).
 

 [5]
 

 . The limited record before us does not disclose or even allude to the rights of all the creditors satisfied by plaintiff if their claims had not been satisfied,
 
 e.g.,
 
 whether the land-clearing claims were unsecured, secured, satisfiable by service liens on the property, etc.
 

 [6]
 

 . It is important to note that plaintiff does not challenge the inclusion of the one-half farm interest in the debtor’s estate.
 

 [7]
 

 . The testimony of Marian Bugos is not entirely dispositive in light of her further testimony relating to a spiral notebook purportedly listing amounts James advanced David. On direct examination she indicated that she recorded the entries as the obligations were incurred (Trial Transcript, p. 9); subsequently she admitted that she made the entries in preparation for trial to reflect other unspecified records
 
 (id.,
 
 p. 24).