In re Alva K. COOPER, Debtor.

Darlene M. COOPER, Plaintiff,

v.

Alva K. COOPER, Defendant.

Bankruptcy No. 86–90673.
Adv. No. 86–9184.

United States Bankruptcy Court,
C.D. Illinois.

March 7, 1988.

William R. Scott, Allen & Korkowski & Associates, Rantoul, Ill., for plaintiff.

Roger L. Prillaman, Prillaman, Prillaman & Savage, Urbana, Ill., for defendant.

## MEMORANDUM AND OPINION

ROBERT E. GINSBERG, Bankruptcy Judge.

### FACTS

■ On April 27, 1984 Darlene and Alva Cooper, ("Darlene" and "Alva" respectively), were divorced. The divorce judgment incorporated by reference a separation agreement entered into by Darlene and Alva on February 21, 1984. Among other things, the separation agreement provided that Alva was obligated to pay the couple's 1983 Federal income taxes and the 1983 real estate taxes on their marital residence. Alva failed to pay either of these tax obligations. As a result, the Internal Revenue Service, (the "IRS"), sent notices both to

Darlene and to Alva of its intention to initiate proceedings to collect the $5028.01 of unpaid Federal income taxes.[1]

On August 2, 1985, Darlene borrowed $11,000 in order to pay a number of debts Alva had assumed under the divorce decree, including the $5028.01 due the IRS and $1055.34 due Champaign County for the 1983 real estate taxes on the Cooper's home. On August 19, 1985 the state court, based upon a written stipulation of the parties, ordered Alva to make the monthly repayments required under the terms of the $11,000 loan.

On July 3, 1986, Alva filed a voluntary petition under Chapter 7 of the Bankruptcy Code, (the "Code"). Shortly thereafter, Darlene filed this adversary proceeding claiming that by paying the income taxes and real estate taxes that Alva was obligated to pay pursuant to the divorce decree she became subrogated to the rights of the taxing authorities. Therefore, Darlene contends that the amounts Alva owed her on account of her payments of those tax debts should be nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A). Darlene subsequently withdrew her claim that she should be subrogated to the position of Champaign County because she paid the 1983 real estate taxes.[2] Therefore, the only issue before the Court is whether Darlene may subrogate to the claim that the IRS would have against Alva had Darlene not paid the taxes in question in order to take advantage of the IRS' rights to have those taxes determined to be nondischargeable.[3]

1. Of course, since the IRS was not a party to the separation agreement and never agreed to look solely to Alva to recover the taxes in question, the IRS was not bound by the couple's separation agreement and was free to go after either Alva or Darlene, or both, for the unpaid taxes. See T.G.I. East Coast Construction Corp. v. Fireman's Fund Insurance Co., 600 F.Supp. 178, 181 (S.D.N.Y.1985); Puerto Rico Marine Management, Inc. v. Ken Penn Amusement, Inc., 574 F.Supp. 563, 566 (W.D.Pa.1983); Beacon Syracuse Associates v. City of Syracuse, 560 F.Supp. 188, 201 (N.D.N.Y.1983). Cf. Meeker v. Gray, 142 Ill.App.3d 717, 492 N.E.2d 508, 515 (1986).

2. She did this because even if she did succeed in subrogating to the position of Champaign County it would do her no good in terms of dischargeability. At the time Alva filed his Chapter

7 petition, the real estate taxes in question had been payable without penalty for well over a year. Therefore, if Darlene had not paid the taxes at the time Alva filed his petition, Champaign County itself could not have successfully brought a claim for nondischargeability of the 1983 real estate tax debt against Alva. See 11 U.S.C. §§ 507(a)(7)(B) and 523(a)(1)(A). Accordingly, Darlene's subrogation would not prevent the debt from being dischargeable.

3. Alva apparently concedes, as he must, that if the income taxes in question had not been paid by Darlene and were still owed by him to the IRS at the time of the petition, the debt to the IRS would be nondischargeable in his Chapter 7 case. The 1983 taxes were due on April 15, 1984. He filed his Chapter 7 petition on July 3,

The matter is now before the Court on Darlene's motion for summary judgment. The parties have stipulated as to the facts and have agreed that no facts are in dispute.[4]

## DISCUSSION

Darlene presents two arguments to support her claim for subrogation. First, Darlene asserts that she is entitled to subrogation as a codebtor under 11 U.S.C. § 509.[5] Second, Darlene maintains that the facts require a finding of subrogation under the common law doctrine of equitable subordination.

■ The first issue before the Court then is whether Darlene can subrogate to the IRS claim as a matter of law. The Code provides for subrogation in section 509(a). Specifically, section 509(a) provides that if a codebtor and debtor are liable on the same claim of a creditor, and the codebtor pays the claim, the codebtor is subrogated to the rights of the creditor to the extent of the payment. The right of a codebtor to subrogate under the Code is a federally created right. This right neither refers to nor is based on state law. Therefore, in this analysis state law is irrelevant.

The Seventh Circuit has interpreted section 509(a) of the Code to allow subrogation

by a codebtor who is liable with the debtor on a debt. *In re Bugos*, 760 F.2d 731 (7th Cir.1985). In *Bugos*, James and David Bugos purchased a farm together and were jointly liable[6] for both the purchase contract payments and other farm expenses. When David experienced financial difficulty, James paid David's share of the farm debts and real estate contract obligations.[7] Shortly thereafter, David filed a bankruptcy petition, and James asserted a creditor claim, arguing that he was entitled to subrogation for all the amounts he paid on David's behalf. The trustee objected, arguing that James was not personally liable for David's portion of the debt and, therefore, the payments he made on David's behalf were gifts. *Bugos* at 732–33.

The Seventh Circuit reasoned that James' payments did not constitute a gift since nonpayment would have resulted in foreclosure of David's and James' joint interest. *Id.* at 734–35. Therefore, the court concluded that James paid the joint obligation in order to protect his own interest. *Id.* Accordingly, the court held that James was entitled to subrogation for the amounts he paid on David's behalf for various debts incurred in connection with the farm. *Id.* at 734, 736.

1986, less than three years after April 15, 1984. Therefore, the income taxes in question would have been less than three years past due at the time the petition was filed and would clearly be nondischargeable as to the IRS. *See* 11 U.S.C. §§ 507(a)(7)(A) and 523(a)(1)(A).

4. This is a core proceeding as a matter relating to the determination of the dischargeability of a debt. *See* 28 U.S.C. § 157(b)(2)(I).

5. In her reply brief, Darlene undermines her own argument somewhat by conceding that section 509 may be inapplicable when a codebtor has paid a debt in full prior to the debtor's filing of his/her bankruptcy petition. Darlene cites as authority for this position a well-respected bankruptcy treatise, *Collier on Bankruptcy*. The authors of *Collier* reason that if the debt were paid by the codebtor prepetition, the codebtor would not need section 509. Instead, the former codebtor would be entitled to subrogate to the claim of the creditor it had paid under traditional state law equitable subrogation doctrine. *But see* n. 11, *infra*. While Darlene correctly states the position set forth by the trea-

tise, *see* 3 *Collier on Bankruptcy* § 509.2 (L. King 15th ed. 1979), this position is in direct opposition to the holding of the Seventh Circuit in *In re Bugos*, 760 F.2d 731, 734 (7th Cir.1985). The key issue before the Seventh Circuit was whether a codebtor could be subrogated under section 509(a) of the Code for prepetition payments made on behalf of the debtor. The court answered this question in the affirmative. *Bugos* at 734. Accordingly, Darlene's citation to the contrary view in *Collier,* while interesting, is unnecessary because this Court is bound by *Bugos.*

6. The Seventh Circuit referred to the liability of the codebtors varyingly as "joint" and "joint and several". *Bugos* at 734, 735. Apparently, the court did not consider it necessary to distinguish between the two types of collective liability for purposes of its decision.

7. James and David were tenants in common of the real estate and had an oral contract which provided that all expenses incurred in connection with the farm were to be shared equally. *Bugos* at 733, 734, 735.

Based on the analysis in *Bugos*, Darlene should be able to subrogate to the IRS' claim against Alva in order to recover the portion of the taxes Alva should have paid. She clearly paid the joint obligation to protect her own interest. In addition, there is support for this conclusion in the legislative history of section 509 of the Code. The legislative history of the section refers to subrogation as a means for codebtors to enforce the right of contribution.[8] Contribution is available to a party that has paid more than his/her share of a joint indebtedness. *See Falcone v. Hinsdale Gynecology and Obstetrics, Ltd.*, 148 Ill.App.3d 439, 499 N.E.2d 694, 700 (1986), *app. denied*, 114 Ill.2d 544, 108 Ill.Dec. 416, 508 N.E.2d 727 (1987). *Cf. Joia v. Jo–Ja Service Corp.*, 817 F.2d 908, 914 (5th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988) (contribution of joint tortfeasors). Darlene is not enforcing her right to contribution under the Internal Revenue Code. Instead, she has a right to full indemnification from Alva because it was his obligation to pay the entire 1983 income tax under the divorce decree. It is this latter right of indemnification she is now asserting.

■ It is clear that none of the exceptions to statutory subrogation set out in sections 509(b) and (c) of the Code apply in the instant case. Alva argues that subrogation is unavailable to Darlene because of section 509(b)(2), which provides "[s]uch entity is not subrogated to the rights of such creditor to the extent that ... as between the debtor and such entity, such entity received the consideration for the claim held by such creditor." As Alva sees it, because Darlene was jointly and severally liable for the taxes in question[9], she received consideration in the form of a release of her obligation for her payment of the taxes. This argument is without merit. The statute looks to the relationship between the debtor and the codebtor in terms of which one received the consideration giving rise to the joint obligation.[10] Here, there is no doubt that Alva, not Darlene, received the consideration resulting from Darlene's payment, since the payment was in satisfaction of Alva's obligation under the divorce decree to pay the full amount of the taxes.[11]

For this Court to simply conclude that Darlene is entitled to subrogate to the IRS claim in and of itself does Darlene no good. Darlene needs more than the right to assert the IRS' claim against Alva's estate. She also needs to succeed to the IRS' right to assert the nondischargeability of its claim. *See* 11 U.S.C. § 523(a)(1). At first glance, the question of her right to do so is not easy to resolve.

■ It is clear that Darlene does not subrogate to the priority of the IRS claim. 11 U.S.C. § 507(d); *In re Smothers*, 60 B.R. 733, 734 (Bankr.W.D.Ky.1986). Alva contends that because the tax claim in Darlene's hands is not entitled to priority, the claim is per se dischargeable. However, lack of priority should not doom Darlene's right to assert nondischargeability of the claim as a successor to the IRS.

■ Nowhere in *haec verba* does the Code require that a tax claim must be

---

8. House Report No. 95–595, 95th Cong., 1st Sess. 358–59 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 73–74 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

9. Joint and several liability for taxes arises automatically when a couple files a joint return. 26 U.S.C. § 6013(d)(3); *Gordon v. United States*, 757 F.2d 1157, 1159 (11th Cir.1985).

10. As the legislative history indicates, "[s]ection 509(b)(2) reiterates the well-known rule that prevents a debtor that is ultimately liable on the debt from recovering from a ... codebtor." 124 Cong.Rec.H 11,095 (September 8, 1978); S 17,-411–12 (October 6, 1978).

11. Under Illinois law, equitable subordination is not available to one who pays a debt when he/she is primarily liable on that debt. *See Bost v. Paulson's Enterprises, Inc.*, 36 Ill.App.3d 135, 343 N.E.2d 168 (1976). *See also* 34 *Illinois Law and Practice*, Subrogation § 5 (1958). Because Darlene was jointly and severally liable for the income taxes owed, *see* n. 9, *supra*, it is at least arguable that she would not be entitled to equitable subrogation under Illinois law. *But see Bugos* at 734, n. 4. However, because the Court finds that Darlene is entitled to subrogation under applicable provisions of the Code, it is unnecessary to reach the merits of her equitable subordination claim.

entitled to priority to be nondischargeable. Instead, the Code provides that a tax claim is nondischargeable, *inter alia*, if it is "of the kind and for the periods specified in section ... 507(a)(7) of this title ...". 11 U.S.C. § 523(a)(1)(A). The claim of the IRS, to which Darlene has subrogated under section 509, is for "a tax on or measured by income or gross receipts ... for a taxable year ending on or before the date of the filing of the petition for which a return ... is last due ... after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(7)(A)(i). Thus Darlene, by subrogating to the IRS' claim against Alva, is able to assert a claim "specified" in section 507(a)(7). The fact that section 507(d) denies the priority to that claim does not alter the character of the claim and is wholly irrelevant to dischargeability. Nothing in section 523(a)(1) makes dischargeability of a tax claim of this type contingent on actual entitlement to priority.[12]

Although the case law is split,[13] the Court believes that section 523(a)(1) of the Code clearly indicates that once it is determined that Darlene is entitled to subrogate to the IRS' claim under section 509, she also becomes entitled to assert the IRS' right to have its debt determined nondischargeable. While the Court is aware of the rule that that the nondischargeability provisions are to be read liberally in favor of a debtor's fresh start,[14] to read section 523(a)(1) to be limited to debts actually owed to the tax collector or those obligations actually entitled to priority under

section 507(a)(7) of the Code would be to read into the statute language that is simply not there.

The result is clear. Alva owes Darlene for her payment of the tax obligation he was to assume under the divorce decree. Because of Darlene's right to subrogate to the IRS' claim pursuant to section 509 of the Code, this debt is a debt for a tax. The tax is of the type specified in 11 U.S.C. § 507(a)(7). Therefore, the debt Alva owes Darlene is nondischargeable.

## CONCLUSION

IT IS HEREBY ORDERED that Darlene Cooper is subrogated to the claim of the IRS pursuant to 11 U.S.C. § 523(a)(1) and that the debt owed to her by Alva Cooper is not included in the discharge that Alva has received in this case.

IT IS FURTHER ORDERED that Darlene Cooper's motion for summary judgment is granted and judgment is entered in her favor in the amount of $5028.01.

---

12. This conclusion is strengthened by the fact that section 523(a)(1)(A) provides that a claim of the type described in section 507(d) is nondischargeable "[W]hether or not a claim for such tax was filed or allowed." If the IRS failed to file a timely proof of claim in a Chapter 7 case for a claim described in section 507(a)(7), the IRS would not only not receive a priority distribution on account of its claim, it would receive no distribution whatsoever or at best a subordinated rather than a priority distribution, even if there were assets to provide a dividend to creditors. *See* 11 U.S.C. § 501(a); Bankruptcy Rule 3002(c). *See also* 11 U.S.C. § 726(a)(3). Nevertheless, the debt the debtor in such case owed the IRS would still be nondischargeable notwithstanding the IRS' failure to file a claim. Accordingly, it is clear that it is the character of the claim, and not the actual entitlement to

priority, that controls on the question of nondischargeability.

13. *Compare In re Waite*, 698 F.2d 1177 (11th Cir.), *reh'g denied*, 703 F.2d 582 (1983); *In re Caffrey*, 77 B.R. 219 (Bankr.W.D.Mo.1987); *In re Alloway*, 37 B.R. 420 (Bankr.E.D.Penn.1984); *with National Collection Agency, Inc. v. Trahan*, 624 F.2d 906 (9th Cir.1984); *In re Campbell*, 74 B.R. 805 (Bankr.M.D.Fla.1987). *See also In re Morris*, 31 B.R. 474 (Bankr.N.D.Ill.1983).

14. *See In re Schnitz*, 52 B.R. 951, 955 (D.Mo. 1985); *In re Hallahan*, 78 B.R. 547, 550 (Bankr. C.D.Ill.1987); *In re Pochel*, 64 B.R. 82, 84 (Bankr.C.D.Ill.1986). *See also In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986).