CREDITOR'S COMMITTEE and Trustees of Beverages International, Ltd. Creditors Trust, Plaintiffs–Appellees,

v.

COMMONWEALTH OF MASSACHUSETTS, DEPARTMENT OF REVENUE, Defendant–Appellant.

Bankruptcy Appeal No. 89–668–C.

United States District Court, D. Massachusetts.

Oct. 2, 1989.

Victor Bass, Palmer & Dodge, Geraldine Brotherton, Marullo & Barnes, Boston, Mass., for plaintiffs-appellees.

R. Alan Fryer, Peabody & Arnold, Jeffrey S. Ogilvie, Boston, Mass., for defendant-appellant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is an appeal from an adversary proceeding in the United States Bankruptcy Court. In 1987, the Creditor's Committee and Trustees of Beverages International ("Creditor's Committee") initiated an adversary proceeding against the Commonwealth of Massachusetts Department of Revenue ("Commonwealth") contesting the Commonwealth's priority claims for unpaid alcohol excise taxes owed by Beverages International, Ltd. ("Beverages International") and N.P. Beverages Corp. ("N.P. Beverages" and together "the Debtors"). The Creditor's Committee claimed that the Commonwealth had already received payment on the unpaid taxes from the U.S. Fire Insurance Co. ("U.S. Fire") which had issued surety bonds guaranteeing the Debtors' tax liability. Further, the Creditor's Committee claimed that U.S. Fire, as a subrogee to the Commonwealth's claims, was not entitled to the Commonwealth's priority status in the bankruptcy proceeding pursuant to 11 U.S.C. § 507(d). In response, U.S. Fire argued that, pursuant to a settlement agreement, U.S. Fire had extended a loan to the Commonwealth covering the principal amount of unpaid taxes, but U.S. Fire had not paid the Commonwealth nor subrogated to its claims in the bankruptcy proceeding. After extensive discovery, both parties moved for summary judgment.

The U.S. Bankruptcy Court for the District of Massachusetts granted summary judgment for the Creditor's Committee. *In re Beverages Int'l Ltd.*, 96 B.R. 407 (Bankr.D.Mass.1989). The bankruptcy court found that the loan agreement between the Commonwealth and U.S. Fire was, in substance, payment of the Commonwealth's claims for the purposes of the bankruptcy proceeding. *Id.* at 411–12. Further, the bankruptcy court found that U.S. Fire was subrogated to the Commonwealth's claims, but was not entitled to the Commonwealth's priority status in the bankruptcy proceeding. *Id.* at 412. U.S. Fire appealed the bankruptcy court ruling,[1] and this Court heard oral arguments in this appeal.

Following a thorough review of the parties' memoranda, the record for this appeal, and the bankruptcy court decision, this Court now affirms.

### I.

For the purposes of this appeal, the relevant facts are as follows. On July 6, 1984, the Beverages International case began with the filing of an involuntary petition under chapter 11. On October 24, 1984, N.P. Beverages filed a voluntary petition under chapter 11. On January 25, 1985, the bankruptcy court entered an order confirming a consolidated liquidating plan for the Debtors. Prior to the plan's confirmation, the Commonwealth had filed proofs of claims for unpaid taxes by the Debtors totalling $185,249.07. Under the consolidated plan, the Commonwealth was given priority status for payment of the unpaid taxes.

The Commonwealth, however, also pursued payment for the taxes from U.S. Fire. Acting as a surety, U.S. Fire had issued two excise tax bonds guaranteeing to pay the Commonwealth for any of the Debtors' unpaid liquor taxes. Starting in 1984, the Commonwealth began making demands on U.S. Fire to pay off the unpaid taxes plus penalties and interest. In 1985, after repeated demands and the threat of suit, the

---

1. Pursuant to the settlement agreement, the Commonwealth authorized U.S. Fire to act as its agent in prosecuting its claims. The appeal in this case was filed by attorneys for U.S. Fire on behalf of the Commonwealth. For the purposes of clarity, this opinion shall refer to the appellants as U.S. Fire.

Commonwealth entered into settlement negotiations with U.S. Fire for payment under the bonds.

The result of those discussions was a detailed settlement agreement between U.S. Fire and the Commonwealth. Executed on April 26, 1985, the settlement agreement called for U.S. Fire to loan the sum of $184,638.58 to the Commonwealth. This loan was to be repaid by the Commonwealth from any sums recovered under its claims pending against the Debtors' estate. In the event the Commonwealth recovered less from the bankrupt estate than the amount of the loan, the Commonwealth was not obligated to pay anything to U.S. Fire. Further, the Commonwealth disclaimed any responsibility to defend the validity of the settlement agreement.

The parties designed the loan arrangement specifically to allow U.S. Fire to step into the priority position of Commonwealth in the bankruptcy proceeding. The settlement agreement states:

> The objective of this agreement is to preserve the Commonwealth's priority claim for taxes under 11 U.S.C. § 507 and § 1109 for the benefit of U.S. Fire, while at the same time enabling U.S. Fire to discharge its obligation to make prompt payment of what appears to be a valid claim on the Bonds as required by Massachusetts law. The parties disclaim any liability on the part of the Commonwealth (1) to repay the Loan in an amount in excess of the amounts recovered on the Commonwealth's claims pursuant to a plan or a Distribution and (2) to defend the validity of this Settlement Agreement in the Proceedings. In the event that the Commonwealth's claims are disallowed in full by the Bankruptcy Court due to the making of the Loan and the execution of this Settlement Agreement, or for any other reason, the Commonwealth shall have no obligation to make any payment to U.S. Fire on account of the Loan.

Pursuant to the agreement, U.S. Fire paid the Commonwealth two checks totalling $184,638.58. These checks were applied without specific instructions to the Commonwealth's accounts in partial payment of the Debtors' unpaid taxes, penalties, and interest. The loan proceeds, however, did not cover $38,425.13 in unpaid taxes and penalties which remain outstanding.

## II.

This court applies a *de novo* standard in reviewing a bankruptcy court order granting summary judgment. *In re Sierra Steel, Inc.*, 96 B.R. 271, 273 (Bankr. 9th Cir.1989); *In re Marvin Properties*, 854 F.2d 1183, 1185 (9th Cir.1988); *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984). Taking the facts in light most favorable to the Commonwealth and U.S. Fire, this Court must determine whether there is no genuine issue of material fact and whether the Creditor's Committee is entitled to judgment as a matter of law. *In re New England Fish Co.*, 749 F.2d at 1280.

## III.

This appeal presents two issues for the Court. First, whether the bankruptcy court erred in finding the loan agreement between the Commonwealth and U.S. Fire constituted payment of the Commonwealth's claims in the bankruptcy proceeding. Second, whether the bankruptcy court erred in finding U.S. Fire, as subrogee, was not entitled to the priority status of the Commonwealth's claims in the bankruptcy proceeding. These issues shall be discussed in order.

A. Whether the Loan to Commonwealth by U.S. Fire Under the Settlement Agreement Constitutes Payment in Bankruptcy Proceeding

Under the bankruptcy code, 11 U.S.C. § 509(a) states the general rule for the subrogation in bankruptcy proceedings. Section 509(a) provides, in pertinent part:

> [A]n entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. § 509(a). Section 509 applies to sureties which have secured the claims of a creditor in a bankruptcy proceeding. *See In re Russell*, 101 B.R. 62, 64–65 (Bank.W. D.Ark.1989); *In re Levitz Electric, Inc.*, 100 B.R. 602, 604 (Bankr.S.D.Fla.1989); *In re Kaiser Steel Corp.*, 89 B.R. 150, 151 (Bankr.D.Colo.1988); 3 Collier on Bankruptcy ¶ 509.01 (15th ed.1985). Furthermore, section 509 covers partial payment by a surety of a creditor's claim. *See In re Russell*, 101 B.R. at 65; 3 Collier on Bankruptcy at ¶ 509.02. Stated generally, this doctrine of subrogation applies for bankruptcy proceedings in "every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *In re Trasks Charolais*, 84 B.R. 646, 648 (Bankr. D.S.D.1988). *See In re Watkins Oil Services, Inc.*, 100 B.R. 7, 10–11 (Bankr.D.Ariz. 1989); *In re Henzler Mfg. Corp.*, 89 B.R. 655, 657 (Bankr.N.D.Ohio 1988); *In re Ted True, Inc.*, 94 B.R. 423, 427 (Bankr.N.D. Tex.1988); *In re Walsey*, 29 B.R. 328, 330 (Bankr.N.D.Ga.1983). In this case, the Court must decide whether the settlement agreement was a payment causing U.S. Fire to be subrogated to the position of the Commonwealth.[2]

The appellant–U.S. Fire argues that the settlement agreement was a voluntary loan transaction, not an obligatory payment to the Commonwealth under its surety bonds. In its memorandum, U.S. Fire argues Massachusetts law controls this issue. *See In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984). U.S. Fire then prominently discusses two Massachusetts cases in support of the validity of the loan transaction. *See Crocker v. New England Power Co.*, 348 Mass. 159, 202 N.E.2d 793 (1964); *National Shawmut Bank of Bos-*

*ton v. Johnson*, 317 Mass. 485, 58 N.E.2d 849 (1945). Finally, U.S. Fire contends that the bankruptcy court ignored the parties' intent as expressed in the settlement agreement. On review of the applicable law and facts, these arguments are not persuasive.

First, this case should be controlled by bankruptcy code provisions, not by state case law. In *New England Fish Co.*, the court stated clearly "[w]hen a bankruptcy court adjudicates a dispute arising from a contract claim, it must apply state law *unless the bankruptcy code provides otherwise.*" 749 F.2d at 1280 (emphasis added). In this case, provisions of 11 U.S.C. §§ 507(a), 507(d) and 509(a) clearly control the issues of subrogation and priority at issue. Furthermore, bankruptcy courts have adjudicated similar issues pursuant to code provisions, not according to state law. *See In re Cooper*, 83 B.R. 544, 546 (Bankr. C.D.Ill.1988).[3]

Second, even if state law were applied here, the decisions in *Crocker* and *National Shawmut Bank* do not reach the specific issues before the Court. *Crocker* and *National Shawmut Bank* uphold the validity of loan transactions made to insureds who are pursuing tort actions. *Crocker*, 348 Mass. at 160–61, 202 N.E.2d 793; *National Shawmut Bank*, 485 Mass. at 487–88, 58 N.E.2d 849. Neither case involves a question of priority status in a bankruptcy case. Nor does either case face the question of subrogation by a surety to a creditor's claim in bankruptcy. Thus, since the validity of the settlement agreement is not a issue,[4] those cases are not on point. Finally, it should be noted, the intent of the parties alone does not control the effect of the agreement in a bankruptcy proceeding.

Taking all facts and circumstances into consideration, the settlement agreement clearly appears as a payment by a surety

---

**2.** The appellant–U.S. Fire does not raise the issue of whether the settlement agreement constituted an assignment of the Commonwealth's rights, and, therefore, this Court does not discuss the question.

**3.** The court in *Cooper* emphatically stated: "The right of a codebtor to subrogate under the Code is a federally created right. The right neither refers to nor is based on state law. Therefore,

in this analysis state law is irrelevant." 83 B.R. at 546.

**4.** The bankruptcy court's decision did not invalidate the loan agreement. In fact, the bankruptcy court expressly allowed the claim of the Commonwealth as subrogor of U.S. Fire. *In Re Beverages*, 96 B.R. at 412.

for an underlying bond obligation.[5] Under the agreement, U.S. Fire paid the Commonwealth a sum equal to the principal amount of Debtors' tax owed, and, in turn, the Commonwealth released U.S. Fire from obligation for the surety bonds. The Commonwealth had no obligation to pay back any portion of the "loan" if its claims were denied in the bankruptcy proceeding. Furthermore, U.S. Fire admitted in the settlement agreement that the Commonwealth had a valid claim under the surety bonds, and U.S. Fire offered the "loan" to satisfy its obligation under the bonds. Despite the reference to the transaction as a "loan," there can be no genuine question that the settlement agreement was a payment for the obligations of the surety bonds. *See In re P.J. Nee Co.*, 36 B.R. 609, 611 (Bankr.D. Md.1983) (bank's characterization of payment as an "involuntary loan" not entitled to priority status in bankruptcy). Pursuant to 11 U.S.C. § 509(a), this payment means U.S. Fire is subrogated to the claims of the Commonwealth in the bankruptcy proceeding.

In reviewing the decision below, the bankruptcy court properly found that there was no genuine issue of material fact regarding the settlement agreement being a payment for the purposes of the bankruptcy proceeding. Further, the bankruptcy court properly recognized U.S. Fire's rights to subrogate to the Commonwealth's claim. The only remaining issue is whether the bankruptcy court properly denied U.S. Fire, as subrogee, the priority status of the Commonwealth.

B. Whether U.S. Fire, as Subrogee for Unpaid Taxes, is Entitled to Priority Status of the Commonwealth

■ Under section 507(d), the bankruptcy code specifically addresses the question of when a subrogee may claim the priority status of a creditor. Section 507(d) provides:

[A]n entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

11 U.S.C. § 507(d). Thus, section 507(d) bars priority status for certain subrogated claims which might otherwise receive priority. *See* 3 Collier on Bankruptcy at § 507.07. Numerous courts have also interpreted section 507(d) to bar the priority status of subrogated claims under subsection (a)(7) which gives priority to government units for unpaid taxes. *See In re Henzler Manufacturing Corp.*, 89 B.R. at 657; *In re Trasks' Charolais*, 84 B.R. at 652 n. 9; *In re Cooper*, 83 B.R. at 544; *In re Tentex Marine, Inc.*, 83 B.R. 530, 534 (Bankr.W.D.Tenn.1988); *In re Spruill*, 83 B.R. 359, 360 n. 1 (Bankr.E.D.N.C.1988); *In re Gaumer*, 83 B.R. 3, 4 (Bankr.S.D. Ohio 1988); *In re Barefoot Sports, Inc.*, 61 B.R. 546, 548 n. 2 (Bankr.W.D.Wis.1986).

The courts have extended section 507(d) to include subsection (a)(7) because of a perceived mistake in congressional drafting. *See In re Gaumer*, 83 B.R. at 4; *In re Barefoot Sports, Inc.*, 61 B.R. at 548 n. 2. In 1984, Congress amended the bankruptcy code by adding a new fifth priority in section 507(a). *See* Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Amendments"), Pub.L. No. 98–353, 98 Stat. 333, 358–89 (1984). The new fifth subsection granted priority to unsecured claims of grain or fish producers to the extent of $2,000 where a storage facility files for bankruptcy. *Id.* at 98 Stat. 358–59. This new fifth priority was inserted into the priority list of section 507(a) causing the former fifth priority to become the sixth, and the former sixth to become the seventh. Despite this change, the subsections cross-referenced by section 507(d) remained unchanged, and further amend-

---

**5.** In analyzing this transaction, this Court recognizes its responsibility to look to the substance, rather than the mere form of the settlement agreement. "It is well established that in proceedings to determine the rights of parties against a bankruptcy estate the bankruptcy court as a court of equity may 'look through the form to substance' in determining the true nature of the transaction in question. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 ... (1939) ...." *In re Bedford Computer Corp.*, 62 B.R. 555, 565 (Bankr.D.N.H.1986) (citations omitted).

ments to the code in 1986 did not correct the problem. *See* Bankruptcy Judges, United States Trustees, and Family Farmer Act of 1986 ("1986 Amendments"), Pub.L. No. 99–554, 100 Stat. 3088, 3117–18 (1986). One commentator has explained:

> Congress, in enacting the 1984 Amendments failed to correct the cross-references to section 507(a) that appear in other Code provisions to account for the 1984 Amendments; the [1986 Amendments] corrected a number of these cross-references to reflect the redesignation. It is impossible to discern whether the absence of any reference in section 507(d) to the fifth priority for grain producers and fishermen, added in 1984, was part of this negligence or was deliberate. The [1986 amendments] made no amendments to section 507(d) and, therefore, did not address this problem.

3 Collier on Bankruptcy at ¶ 507.07.

In reviewing this legislative history, courts have concluded that Congress has not expressed any clear intent to change the substantive provisions of section 507(d) in either its 1984 nor its 1986 amendments to the bankruptcy code. *In Re Gaumer*, 83 B.R. at 4; *In re Barefoot Sports, Inc.*, 61 B.R. at 548 n. 2. Absent such clear intent, the bankruptcy courts have relied on the presumption that "repeals of judicial constructions of legislation are usually required to be clear and manifest." *In re Missionary Baptist Foundation of America*, 667 F.2d 1244, 1246 (5th Cir.1982). Consequently, the courts have consistently denied priority status to subrogees making claims under subsection (a)(7).

The appellant–U.S. Fire argues that the statutory construction adopted by these courts is flawed.[6] U.S. Fire argues that this Court must follow the plain meaning of the statute and that Congress in the 1984 and 1986 amendments intended to exempt subrogees to tax claims from the priority bar of section 507(d). Finally, U.S. Fire argues that public policy favors allow-

ing sureties as subrogees to keep the priority status of government units in bankruptcy proceedings.

U.S. Fire's contentions, while arguable, are not persuasive given the weight of authority and reason in interpreting section 507(d). First, the courts to reach this issue have consistently held that 507(d) should cover subsection (a)(7). *See In re Henzler Manufacturing Corp.*, 89 B.R. at 657; *In re Trasks' Charolais*, 84 B.R. at 652 n. 9; *In re Cooper*, 83 B.R. at 547; *In re Tentex Marine, Inc.*, 83 B.R. at 530; *In re Spruill*, 83 B.R. at 360 n. 1; *In re Gaumer*, 83 B.R. at 4; *In re Barefoot Sports, Inc.*, 61 B.R. at 548 n. 2. The courts have found no evidence that Congress intended to alter the priority status of subrogees to tax claims under section 507(a)(7). *In re Gaumer*, 83 B.R. at 4; *In re Barefoot Sports, Inc.*, 61 B.R. at 548 n. 2.

Second, U.S. Fire's plain meaning argument rests on certain premises and inferences drawn from Congressional silence. Under U.S. Fire's rationale, the Congress's decision to insert section 507(a)(5) shows clear intent to change substantively sections 507(d) and 507(a)(7). The legislative history accompanying the 1984 amendments, however, does not even discuss changes to sections 507(d) and 507(a)(7). *See* 1987 U.S.Code Cong. & Admin.News 489, 576–606.

Third, U.S. Fire's public policy arguments lack a thorough discussion of all the equities in this case. It is well established that courts are guided by principles of equity in bankruptcy proceedings. *See Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *In re Bedford Computer Corp.*, 62 B.R. 555, 556. In its memorandum, U.S. Fire does not explain why sureties, as subrogees on tax claims, should be entitled to greater preferential treatment than subrogees under the other subsections excluded by section 507(d). Furthermore, U.S. Fire does not explain

---

**6.** The appellant–U.S. Fire properly makes this argument only with respect to the claim by N.P. Beverages. The 1984 Amendments became effective on October 8, 1984. The petition for Beverages International was filed on July 6, 1984 prior to the effective date of the 1984 Amendments. The petition for N.P. Beverages, however, was filed on October 24, 1984, and therefore is subject to the 1984 amendments.

why a surety, which contracted to undertake the risk of securing unpaid tax responsibilities, should be given priority over numerous general unsecured creditors in this bankruptcy proceeding.

In sum, absent clear Congressional intent to the contrary and given the substantial weight of prior decisions on this issue, this Court construes section 507(d) to bar the priority status of the Commonwealth's claims pursued by U.S. Fire in this bankruptcy proceeding. U.S. Fire remains, however, subrogated to the Commonwealth's claims as a general unsecured creditor.

#### IV.

For the reasons stated above, this Court holds that the bankruptcy court did not err in finding that the loan agreement between the Commonwealth and U.S. Fire constituted payment of the Commonwealth's claims in the bankruptcy proceeding. Further, this Court holds that the bankruptcy court did not err in finding that U.S. Fire, as subrogee, was not entitled to the priority status of the Commonwealth's claims in the bankruptcy proceeding. Consequently, this Court affirms the bankruptcy court's opinion and judgment.

Order accordingly.