Bernadine V. FELDHAHN, Appellant,

v.

Leroy FELDHAHN, Appellee.

Bernadine V. FELDHAHN, Appellee,

v.

Leroy FELDHAHN, Appellant.

Nos. 90–1870, 90–1964.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1991.

Decided April 12, 1991.

Barry Barash, Galesburg, Ill., for appellant.

Dan Childers, Cedar Rapids, Iowa, for appellee.

Before MAGILL, Circuit Judge, ROSS, Senior Circuit Judge, and HUNTER,* Senior District Judge.

MAGILL, Circuit Judge.

Bernadine Feldhahn appeals from the district court's [1] determination that she is not entitled to statutory interest under Iowa law on a lien. Her ex-husband, Leroy Feldhahn, cross-appeals from the district court's ruling that Bernadine may subrogate a $130,000 claim against Leroy's bankruptcy estate under 11 U.S.C. § 509(a) (1988). We affirm on both issues.

## I.

The issues in this case arise from a hotly contested divorce proceeding that culminated on March 3, 1986. As part of the divorce decree's property settlement, Bernadine Feldhahn received Rathjen Farm, the family homestead. Rathjen Farm was fully mortgaged to the Federal Land Bank (FLB). Leroy Feldhahn [2] received certain property (Brady Street) that was suitable for commercial development. Brady Street had a stipulated value of $915,000 and was subject to Walcott Trust and Savings Bank's $195,000 lien. The decree obligated Leroy to repay his and Bernadine's $927,690 debt to the FLB, which was secured by notes both Leroy and Bernadine had signed. The decree further obligated Leroy to refinance promptly all of his and Bernadine's debts to remove the encumbrances on Rathjen Farm. To ensure this, the decree provided Bernadine with a $405,454 lien against Brady Street until Leroy relieved Rathjen Farm of all encumbrances, including the FLB's mortgage.

After unsuccessfully attempting to refinance his debts, Leroy filed for Chapter 11 bankruptcy on May 6, 1987. The FLB began proceedings to recover the $927,690 Leroy and Bernadine jointly owed it. The FLB foreclosed on all property in which it had an interest, including Rathjen Farm.

The parties have stipulated that until July 1, 1987, Bernadine had the use of and the income from Rathjen Farm. After the FLB sold the encumbered property, including Rathjen Farm, the Feldhahns still owed the FLB $356,000. Leroy agreed to pay the FLB $77,000 in satisfaction of the deficiency. Bernadine agreed to assign up to $130,000 of the total that she would receive from the contemplated sale of Brady Street. The FLB then canceled the original notes it held for the Feldhahns' debts.

The bankruptcy case continued for two years. Many issues were settled, but two proceeded to trial, namely, whether Bernadine was entitled to interest after July 1, 1987, on the $405,454 lien she held against Rathjen Farm, and whether Bernadine could subrogate a $130,000 claim against Leroy's estate under 11 U.S.C. § 509(a) for having helped to satisfy his indebtedness to the FLB. The bankruptcy court ruled that Bernadine was not entitled to interest on her lien under Iowa law, and also denied her request to subrogate a claim against Leroy's estate. On appeal, the district court affirmed the bankruptcy court's ruling as to the interest, but reversed the court on the subrogation issue. Bernadine and Leroy both appeal the district court's final judgment.

## II.

### A. Interest Under Iowa Code § 535.3

■ Bernadine argues that the district court erred in determining that she was not entitled to interest on the $405,454 lien. Bernadine bases her claim on Iowa Code § 535.3 (Supp.1990), which provides: "Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year...." She contends that the $405,454 lien on Brady Street resulting from her divorce decree was a judgment or decree of court and that because

---

* THE HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

2. For clarity's sake, we refer to the parties by their first names throughout the rest of the opinion.

Leroy did not free the Rathjen Farm of its mortgage, she is entitled to interest on the lien dating from when she lost the use of the farm.

For Bernadine to be entitled to interest under § 535.3, she must possess a judgment or decree of court in her favor. We do not believe that Bernadine's lien against Brady Street constitutes such a judgment or decree as contemplated by the statute. As an initial matter, at this point in time Bernadine possesses merely the lien, and has not attempted to reduce it to judgment. Furthermore, at the time of the divorce decree, whether Bernadine would ever be entitled to foreclose on the lien was contingent on Leroy's failure to deliver Rathjen Farm free and clear. Such contingent awards are not entitled to interest under § 535.3. In *Dillon v. City of Davenport*, 366 N.W.2d 918 (Iowa 1985), the state supreme court expressly held that § 535.3 did not apply to a decree enforcing a settlement agreement for $150,000 because the money award was contingent:

> The instant judgment is not the equivalent of a money judgment.... Before this [agreement] would become the equivalent of a money judgment, another condition must occur—the approval of the Industrial Commissioner.... We cannot state with a degree of certainty that this will occur. Thus, we conclude that even if we liberally construe section 535.3, interest on this judgment and decree is not proper.

*Id.* at 927; *see also Arnold v. Arnold*, 258 Iowa 850, 140 N.W.2d 874, 879 (1966) (holding that § 535.3 "cannot be so extended as to embrace awards ... which are uncertain, indefinite and conjectural"). Therefore, the contingent nature of Bernadine's lien award argues against the application of § 535.3 in this case.

Further militating against the application of § 535.3 to Bernadine's situation is the Iowa Supreme Court's statement that a divorce decree's property settlement "*cannot be considered the equivalent of a*

*money judgment as contemplated under section 535.3.*" *In re Marriage of Baculis*, 430 N.W.2d 399, 403 (Iowa 1988) (emphasis added). We also note that in Iowa, whether to award interest in dissolution proceedings is a matter of discretion based on equitable principles. *Id.* at 405. This points up another flaw in Bernadine's argument. Bernadine claims she is due interest under § 535.3, but interest under § 535.3 is *not* discretionary. *See Sheer Constr., Inc. v. W. Hodgman & Sons, Inc.*, 326 N.W.2d 328, 334 (Iowa 1982).

In sum, the bankruptcy and district courts correctly refused to award Bernadine interest under § 535.3. Her claim is not premised on the type of judgment or decree the Iowa Supreme Court has found necessary to justify awarding interest under the statute.[3]

### B. Subrogation and 11 U.S.C. § 509(a)

■ Leroy argues in his cross-appeal that the district court erred in determining that Bernadine could subrogate a $130,000 claim against Leroy's estate. The relevant statute provides: "[A]n entity that is liable with the debtor on ... a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. § 509(a) (1988). It is undisputed that because Bernadine co-signed the promissory notes to the FLB, she was jointly and severally liable with Leroy for the $356,000.

Leroy claims that Bernadine is not entitled to subrogation because she fails the five-part § 509(a) subrogation test set out in *In re Leedy Mortgage Co.*, 111 B.R. 488 (Bankr.E.D.Pa.1990). Under *Leedy*, for a claimant to be entitled to subrogation:

1) Payment must have been made by the subrogee to protect his own interest.

2) The subrogee must not have acted as a volunteer.

---

**3.** Our conclusion under § 535.3, however, does not mean that Bernadine has no possibility of obtaining interest. When she eventually seeks to foreclose the lien, a state court may decide to award interest on equitable grounds. The same may be true if Bernadine seeks to reform her divorce decree.

3) The debt paid must be one for which the subrogee was not primarily liable.

4) The entire debt must have been paid.

5) Subrogation must not work any injustice to the rights of others.

*Id.* at 492.[4]

As regards the five-part test, Leroy argues that Bernadine fails the first, second, and fourth parts. Parts one and two concern whether the subrogee made the payment as a volunteer and in the subrogee's own interest. Leroy's contention that Bernadine acted as a volunteer is meritless. Because Bernadine was jointly and severally liable for the $356,000 owed the FLB, her attempt to discharge the indebtedness was not voluntary, *see In re Bugos,* 760 F.2d 731, 734–35 (7th Cir.1985); *In re Zoglman,* 78 B.R. 213, 215 (Bankr.W.D.Wis. 1987), and was in her own interest. *See In re Cooper,* 83 B.R. 544, 547 (Bankr.C.D.Ill. 1988); *Zoglman,* 78 B.R. at 215.[5]

The fourth part of the test requires the subrogee to pay the entire debt. Leroy argues that because he still owes the FLB $760,000 in secured debt, plus $77,000 in unsecured debt representing a deficiency judgment, Bernadine's assignment did not satisfy the entire debt. This argument is meritless. The FLB's $356,000 claim was separate from the other debts Leroy had to the FLB, and is treated separately in Leroy's "Fourth Amended and Substituted Plan for Reorganization." Appellee's App. at 14. Bernadine's assignment did satisfy the $356,000 debt, and thus the latter portion of part four is satisfied.

■ This still leaves the issue of whether Bernadine's collateralized assignment constitutes payment under the statute. Al-

though there is a dearth of relevant case law on this issue, the secondary authorities agree that to subrogate a claim, payment in the technical sense is not required. *See* 73 Am.Jur.2d *Subrogation* § 29 (1974) ("Payment of the debt need not necessarily be made in money to entitle the party making the payment to subrogation. Whatever discharges the liability and is accepted as payment is sufficient."); 83 C.J.S. *Subrogation* § 48(a) (1953) ("It is immaterial in what way a surety satisfied the debt provided he was discharged from liability to his creditor...."); *see also* Black's Law Dictionary 1016 (5th ed.1979) (defining payment as a "discharge of an obligation or debt"). Similarly, a leading bankruptcy treatise takes a broad approach to the payment requirement: "A partial discharge of the principal debt by the codebtor is clearly covered by section 509(a).... Section 509(a) also clearly applies to a codebtor who discharges the principal debt in full." 3 Collier on Bankruptcy ¶ 509.02 (15th ed. 1990). In this case, Bernadine discharged the debt by means of assigning up to $130,000 of her interest in Brady Street. Therefore, we conclude that Bernadine's collateralized assignment constitutes payment under § 509(a).

Leroy also alleges matters that are not properly before us, hoping to convince us that the equities favor him. On the contrary, the equities are clearly on Bernadine's side on this issue. The clear language of the divorce decree states that Leroy was responsible for the couple's debts to the FLB. Bernadine helped satisfy those debts. Therefore, it would be unfair to allow Leroy to avoid his obli-

---

4. Our use of the *Leedy* test in this case does not mean that we believe it is the only proper analysis for a § 509(a) claim. We note that the *Leedy* factors do not strictly follow the language of § 509(a). We also note that the *Leedy* test has its origins in equitable subrogation cases, not § 509 cases, and that some courts consider these distinct forms of subrogation. *See In re Carley Capital Group,* 118 B.R. 982, 989 (Bankr. W.D.Wis.), *aff'd* 119 B.R. 646 (W.D.Wis.1990); *In re Spirtos,* 103 B.R. 240, 244 (Bankr.C.D.Cal. 1989).

5. This is not to say, however, that Bernadine received legal consideration from the FLB for

assigning her interest in Brady Street. If that were the case, then Bernadine's claim might be barred by § 509(b)(2), which states that no subrogation exists to the extent that "as between the debtor and such [co-debtor], such [co-debtor] received the consideration for the claim held by such creditor." 11 U.S.C. § 509(b)(2). Here, Leroy received the legal consideration because the assignment was in satisfaction of his obligation under the divorce decree to pay the couple's debts to the FLB. *See Cooper,* 83 B.R. at 547.

gations under the divorce decree at Bernadine's expense.

### III.

For the foregoing reasons, the district court's judgment is affirmed.